## COLLINS *v.* RUSSELL.

1. The legislature of this State has the constitutional power to pass an act shortening the terms of the offices of clerk and sheriff of the city court of Savannah; and the term of service of an incumbent of one of these offices may be thus brought to an end before the expiration of the time for which such incumbent was originally elected.

2. The act of the legislature approved December 16, 1898 (Acts of 1898, p. 265), entitled "An act to fix the time for the election of all city officers now elected by the council of the Mayor and Aldermen of the City of Savannah, to provide for the terms of such officers, to terminate the terms of those now in office, and for other purposes," does not violate paragraph 17, section 7, article 3 of the constitution of 1877 (Civil Code, § 5779) simply because it does not "distinctly describe" or in any man-

ner refer to the act of November 29, 1895 (Acts 1895, p. 394), upon which the act of 1898 operates.

3. The title to the above-mentioned act of 1898 is sufficiently comprehensive to embrace the provision in the body thereof relating to the clerk and sheriff of the city court of Savannah; and the body of the act does not, within the meaning of paragraph 8, section 7, article 3 of the constitution of 1877 (Civil Code, § 5771), contain matter different from what is expressed in its title; nor does it refer to more than one subject-matter.

LUMPKIN, P. J., concurring specially. SIMMONS, C. J., and LITTLE, J., dissenting.

Argued February 9, — Decided April 24, 1899.

Quo warranto. Before Judge Falligant. Chatham superior court. December term, 1898.

*Alexander A. Lawrence* and *Spencer R. Atkinson*, for plaintiff. *Denmark, Adams & Freeman*, for defendant.

LEWIS, J. Plaintiff in error brought his petition to the superior court of Chatham county, making substantially the following case: In December, 1895, petitioner was elected by the Mayor and Aldermen of the City of Savannah clerk of the city court of Savannah for a term of four years beginning January 1, 1896. After the election petitioner duly qualified and continued to occupy the office from the 1st day of January, 1896, until the 12th of January, 1899. His election was by virtue of the provisions of the act of November 29, 1895 (Acts 1895, p. 394). The legislature of this State at its annual session of 1898 passed an act entitled "An act to fix the time for the election of all city officers now elected by the council of the Mayor and Aldermen of the City of Savannah, to provide for the terms of such officers, to terminate the terms of those now in office, and for other purposes," approved December 16, 1898. On the 11th of January, 1899, the Mayor and Aldermen of the City of Savannah in pursuance of the last-mentioned act elected Waring Russell Jr., the defendant, to the office of clerk of the city court of Savannah, who thereafter, against the consent of petitioner, took possession of the office and deprived the petitioner of the possession thereof, respondent still remaining in possession and claiming title thereto under such election. The constitutionality of this act of 1898 was attacked in the petition and amendments thereto, on the following grounds:

(1) Because the removal of an officer being a judicial function, the legislature has no authority under any constitutional provision to accomplish that purpose by shortening petitioner's term of office. (2) Because the act in question does not distinctly describe, or in any manner refer to, the act approved November 29, 1895, upon which it operates and which it repeals, and to that extent violates paragraph 17, section 7, article 3 of the constitution. (3) Because, the title of the act being limited to the fixing of a time for the election of city officers now elected by the mayor and aldermen, and the body of the act being extended to the fixing of a time for the election "of all city officers now elected by the council of the Mayor and Aldermen of the City of Savannah, including the clerk and sheriff of the city court of Savannah," the body of the act contains matter different from what is expressed in the title, and is to that extent violative of the provisions of the constitution contained in paragraph 8, section 7, article 3 of the constitution of 1877. Petitioner also alleged that the body of the act contained more than one subject-matter. The prayers of the petition were, that the election of Waring Russell Jr. be declared illegal and void; that petitioner be allowed to file his petition in the nature of a quo warranto, and respondent be required to come into court and show by what authority he held the office and by what right he occupied the same; that petitioner be declared the clerk of the city court of Savannah, duly and legally entitled to hold the office until January 1, 1900; and that a rule nisi issue, calling upon and requiring the respondent to show cause why the several prayers of the petition should not be granted and the State's writ of quo warranto issue as prescribed by law in such cases. In response to this application the respondent appeared by his attorney, and demurred to the petition and moved to dismiss the same upon the ground that it appeared from the application that the respondent legally held the office mentioned, and that petitioner set forth no cause or reason for the remedy for which he prayed. Upon the hearing the court sustained the demurrer and ordered the application dismissed; upon which judgment of the court plaintiff in error assigns error in his bill of exceptions.

1. There can be no question about the proposition that the legislative power of the State is absolute with respect to all offices that it creates, where no constitutional restriction is placed upon its power with reference to such offices. The incumbent of such an office does not hold the same by virtue of any sort of contract, express or implied, with the State or its lawmaking power, which gives him a vested right in the office. He accepts the office subject to the control of it by any legislative action in reference thereto which might thereafter be taken. The legislature may abolish the office before his term expires, may modify its duties, may shorten or lengthen the term, and increase or diminish the salary or change the mode of compensation. See Butler *v.* Pennsylvania, 10 How. 402, affirmed in Newton *v.* Commissioners, 100 U. S. 559; *City Council of Augusta* v. *Sweeney,* 44 *Ga.* 463. So well settled is this principle that further discussion or citation of authority on the subject is unnecessary.

2. Another ground of attack upon the constitutionality of the act of 1898 is, that it operates upon and repeals the act of 1895 (Acts 1895, p. 394), and that the former act, not referring to or specifically describing the latter, is obnoxious to paragraph 17, section 7, article 3 of the constitution (Civil Code, §5779). That provision in the constitution declares that "No law, or section of the code, shall be amended or repealed by mere reference to its title, or to the number of the section of the code, but the amending or repealing act shall distinctly describe the law to be amended or repealed, as well as the alteration to be made." The act in question does not purport to amend or repeal any particular law or section of the code, but in general terms, indicated by its title, simply undertakes to fix a time for the election of certain officers, to provide for the terms of such officers, to terminate the terms of those now in office, and for other purposes. By reference to several decisions of this court it will be clearly seen, without further argument, that this act is not obnoxious to the provision of the constitution above quoted. *Peed* v. *McCrary,* 94 *Ga.* 487; *Bagwell* v. *Lawrenceville,* Ibid. 654; *Johnson* v. *Southern Mut. B. & L. Asso.,* 97 *Ga.* 622; *Swift* v. *Van Dyke,* 98 *Ga.* 725.

3. The main question in this case, however, and the one upon which counsel for plaintiff in error relied, is whether or not the act of 1898 is unconstitutional because it contains in the body thereof matter different from what is expressed in its title. It is insisted with much plausibility and force that the clerk and sheriff of the city court of Savannah are not city officers, and that the use of the words "city officers" in the title can not indicate any purpose to deal with these two officers. The powers and duties of the city court of Savannah relate to the administration of State law, and it is doubtless true that that court is as much embraced within the judicial system of the State as any other court recognized by its constitution and laws. As now constituted it has nothing to do with matters that solely concern the municipal affairs of the city of Savannah; and hence it is with force contended by counsel for plaintiff in error that the officers of that court can not properly be designated as city officers. It is insisted that in determining the classification of a particular office reference should be had to the powers and duties of its incumbent and to the objects and purposes for which the office was created. As a general proposition we think this is true, and it may be conceded in this case that ordinarily when mention is made of a city office the mind would naturally conclude that reference was made only to such an office as pertains to, and is in some way connected with, the municipal affairs of a city government. But we do not think that it necessarily follows that such a rule of interpretation should be strictly and rigidly adhered to, especially in a case that involves the constitutionality of a law passed by a co-ordinate branch of the government. Why should the duties of a particular officer or the character of his office determine the particular class in which it should be designated, any more than the source or tribunal by which the officer is elected and from which he receives his commission to act? There are three general classifications of officers, under one or more of which perhaps would be included all the civil officers of this State, viz., State, county, and municipal or city officers. It is alleged in the petition in this case that the office of clerk of the city court of Savannah is a State and county

office. Now let us apply a rigid rule of construction and see, for instance, whether this officer could with any more propriety be classified as a county officer than a city officer. Applying the same rule insisted upon by counsel for plaintiff in error, in order to designate this clerk as a county officer his duties and the nature of his office should relate particularly and peculiarly to county matters; but the truth of the matter is, that they are no more concerned with the affairs of the County of Chatham than the municipal affairs of the City of Savannah. The constitution of the State declares that "the county officers shall be elected by the qualified voters of their respective counties, or districts, and shall hold their offices for two years." Civil Code, § 5929. If then the clerk of the city court of Savannah is a county officer, the petitioner in this case, who claims his office by virtue of an election of the Mayor and Aldermen of the City and not by virtue of a popular election, has no title to it. If therefore the title to the act had been to change the terms of the county officers of the county of Chatham elected by the mayor and aldermen, we think, to say the least of it, that the act would have been just as obnoxious to the constitutional provision invoked as the act is now in its present shape. Now let us see if under the rigid sense of the term he is a State officer. In section 228 of the Political Code it is declared that "All other civil officers of the State or county shall be commissioned under the seal of the Executive Department, signed by the Governor, and countersigned by one of his secretaries, except constables," etc. This language, taken in connection with sections 226 and 227 of the Political Code, it will be seen would necessarily include the office of clerk of the city court of Savannah, provided that office, strictly speaking, is either a State or a county office. But this office is not filled either by appointment of the Governor or by a person commissioned by the Governor. On the contrary its incumbent is elected by the constituted authorities of the municipal government of the City of Savannah, receives from them his commission or certificate of election, and derives his power to act from that body.

We refer to these provisions of the constitution and laws of

the State with a view to showing that this particular office now
under consideration would fall as properly under the classifica-
tion of a city office as it would under that of either a State or
county office, and of further showing that where there is an un-
dertaking by the legislature to embrace in general and com-
prehensive terms a particular office, it will not do to give its
language the rigid and strict interpretation insisted upon in
this case by counsel for plaintiff in error.   We must look not
only to the literal and technical rules upon the subject, but also
to the general and common acceptation of terms.   To illustrate :
In many counties of this State the entire affairs of the county,
in so far as they relate to those functions and duties pertaining
to its separate political organization, are taken out of the hands
of the ordinary and placed in the hands of a board of commis-
sioners.   In such counties these officers are more properly
speaking county officers than is the ordinary, that officer's
duties in those instances not at all relating to county affairs
but pertaining strictly to the administration of State laws;
and the court of ordinary is in such instances as much a part
of the judicial system of the State as is the city court of Savan-
nah.   Yet, under the general understanding with reference to
who constitutes county officers, an act of the legislature chang-
ing generally over the State the terms or time of election of
county officers we think would certainly apply to the ordina-
ries of those counties in which, strictly speaking, they are not
county officers.   It is highly proper, therefore, in considering
the question as to whether or not the words "city officers"
can be properly construed to embrace the particular office now
under consideration, to inquire whether or not any reason has
ever existed for so classifying this office; and, as throwing a
flood of light on this question, the history of the city court of
Savannah from its early inception may well be looked to and
considered.   By virtue of an act of the General Assembly of
the State, approved February 18, 1796, there was organized
for Savannah what was known as the "mayor's court," and
upon that court was conferred jurisdiction over civil cases
arising under State laws to a certain amount.   That court
thereafter became one embraced in the judicial system of

the State. Watkins' Dig. 589. In several acts of the legisla-
ture, passed after the organization of that court, its clerk and
sheriff were treated as city officers. To show this it is only
necessary to cite two or three of these acts. On November 29,
1806, there was passed an act "to regulate the election of
aldermen of the City of Savannah and the city officers," etc.
Under the classification of " city officers" was included the
clerk of the mayor's court, and it was provided by the act that
he should be elected by the people. Clayton's Dig. 311, 312.
On May 23, 1808, a law was passed entitled an act "to alter
the mode of electing the city officers of the City of Savan-
nah." The body of that, act conferred upon the mayor and
aldermen of the city the power to elect the sheriff and the
clerk of the mayor's court, as well as the city marshal and the
clerk of the council. Clayton's Dig. 435. On December 18,
1819 (Lamar's Dig. 387), an act was adopted for the organi-
zation of a "court of common pleas and of oyer and terminer
for the city of Savannah." This act provided that that court
should have jurisdiction of all civil cases not exceeding in
amount the sum of $200 or less than $30, and also jurisdiction
of all minor offenses against the State of Georgia, not punish-
able by confinement in the penitentiary. In section 12 of that
act it was provided that the clerk and sheriff of the mayor's
court should be clerk and sheriff of the court created by the
act. Section 14 provided that the mayor and aldermen should
furnish the clerk with a book in which to record the proceed-
ings of the court. Section 15 charged the clerk with all the
duties and liabilities attached to the office of clerk of the su-
perior and inferior courts. Under section 18 he takes the same
oath, and under section 23 all suits then pending in the mayor's
court were transferred to the court organized under the act.
In other words, the act establishing this court of common pleas
and of oyer and terminer made that court as purely and strictly
a State court, having jurisdiction and cognizance of matters
pertaining to State law, as the present court of the City of
Savannah now has or ever had. Yet we find in subsequent
acts of the legislature that these very officers were treated as
city officers. For instance, the title to the act of December 13,

1820 (Dawson's Comp. 429), was "an act to render legal and valid the election of city officers for the City of Savannah"; and to amend an act passed the 23rd of May, 1808, entitled "an act to alter the mode of electing city officers of the City of Savannah." In the body of that act (section 2) we find among the officers thus classified as city officers the sheriff and clerk of the court of common pleas and of oyer and terminer for the City of Savannah, and provision was made for these officers holding their offices for a term of three years.

The present city court of Savannah derived its name from an act passed on December 19, 1853 (Acts 1853-4, p. 281). The title to that act was "an act to amend the several acts relating to the court of common pleas and of oyer and terminer of the City of Savannah, and for other purposes." In the body of the act all laws applicable to the court of common pleas and of oyer and terminer of the City of Savannah, not conflicting with the act, were made applicable to the city court of Savannah. All officers of the former court then in office held their offices as if the act had never been passed. The nature of the court which had existed from 1819 to December, 1853, was not changed; the only effect of the act being to change the name of the court and the extent of its jurisdiction. Under the act of 1857 (Acts 1857, p. 115), embodied in section 4961 of the Code of 1882, a new feature was introduced in the law touching the city court of Savannah, empowering the judge of that court in conjunction with the mayor of the City of Savannah to select five members of the mounted or foot police of the city as special bailiffs of the court, who should remain such bailiffs for one year, unless sooner removed by the judge or unless in case of dismissal or resignation from the police force. By virtue of this act it will be seen the administration of law in that court was still more intimately associated with the appointing power and supervision of the mayor, the officer at the head of the municipal government. After the organization of the city court of Savannah, it seems that by order of the city council of Savannah all the laws of the State of Georgia referring to this city were codified by the city attorney. In the codification of these laws were included the several acts pertaining to the city court of Savan-

nah.   By virtue of the act of December 19, 1860 (Acts 1860,
p. 24), the legislature provided that all these acts thus codified
should be made a part of the Code of Georgia, and they were
accordingly embodied in an appendix to every Code of this
State down to and including the Code of 1882.   The acts relat-
ing to the city court of Savannah have thus been treated by the
legislature as a part of the laws relating to that city.   The ob-
ject of the constitutional provision invoked in this case was to
prevent surreptitious legislation.   In view of all this history
touching the city court of Savannah, we are not prepared to
say that the title of the act of 1898 was calculated to mislead
either the representatives of the County of Chatham in the Gen-
eral Assembly or the members of the community generally,
who were particularly, and we may say exclusively, affected
by this legislation.   It is unnecessary to lengthen this opinion
by any special reference to the various ordinances of the City
of Savannah which clearly treat the offices of clerk and sheriff
of the city court as city offices.   Of these ordinances this court
will take cognizance equally with the acts of the legislature
above referred to, by virtue of a special act of the legislature.
In view, therefore, of the history of legislation bearing upon
the city court of Savannah, in view of the fact that it origi-
nally sprung up as one of the institutions of that city, and
that its officers have been referred to both by the legislature of
this State and by the municipal legislature of Savannah as city
officers, and in view of the further fact that the clerk of that
court is still appointed and commissioned by the council of the
mayor and aldermen of that city, who have power to admin-
ister to him the oath of office, to whom his official bond is made
payable and on which no action can be maintained except in
the name of the mayor and aldermen, and finally in view of
the fact that all legislation relating to the nature of that court
and the powers and duties of its officers has been embodied
in its code of laws and treated by the legislature of this State
as laws peculiar to that city, we do not think that it is a strained
construction of the act of 1898 to say that the words, "all city
officers now elected by the council of the Mayor and Aldermen
of the City of Savannah," include by their comprehensive terms

the office of clerk of the city court of Savannah. It necessarily follows from the above that the act under consideration does not refer to more than one subject-matter within the meaning of the constitution. Civil Code, § 5771.

We have examined carefully the several authorities cited by counsel for plaintiff in error, but we do not think any of them are in point, as none of them involved the particular constitutional question presented by this record. In the case of Whitmore v. Mayor, 67 N. Y. 21, it appeared that the act in question was entitled an act to reorganize the local government of the City of New York. The body of the act authorized the board of apportionment to fix the salaries of all officers paid from the city treasury. It was decided in that case that the clerks of the district court of the city were not such officers, but judicial officers embraced within the judicial system of the State. In the first place a marked difference between the title to that act and that of the one we are now considering will be noticed. There would be some similarity between the cases if the title to the Georgia act of 1898 were to change the terms of such city officers whose duties relate to the local government of the City of Savannah. But that case does not decide any constitutional question growing out of the contention that the body of the act contains matter different from what is expressed in its title. On the contrary it is stated in the report of the case that the constitutional question was not considered. The effect of the decision is, that, construing the body of the act in connection with its title, it was not within the purview of the legislature even by the terms used in the body of the act to refer to the particular office in question, to wit, the office of clerk of the district court of the city. The decision in the case of Harris v. People, 59 N. Y. 599, is more nearly in point. It was held in that case, that an act entitled "An act to revise the charter of Long Island City" was sufficiently comprehensive to embrace a provision in the body creating a city court. It appeared that the powers conferred upon that court related to the administration of State law. That case involved the trial of a person accused of the offense of burglary, a violation of the criminal law of the State of New York, and it was held

that the act was not contrary to the provisions of the State constitution declaring that "a local act shall embrace but one subject and that shall be expressed in its title." In the case of State ex rel. Walker *v.* Bus., (Mo.) 36 S. W. 636, it appears that there was a constitutional provision in Missouri declaring that, "in cities or counties having more than two hundred thousand inhabitants, no person shall at the same time be a State officer and an officer of any county, city, or other municipality, and no person shall at the same time fill two municipal offices, either in the same or different municipalities." It was decided in that case simply that a deputy-sheriff was not a "State officer" within the meaning of that provision of the constitution, nor did he as such deputy hold office under the city, and therefore he was not prohibited from holding the office of school director in such city. Another case relied upon by counsel for defendant in error is the case of Kahn *v.* Sutro, (Cal.) 46 Pac. 87. It appears in that case that the incorporated limits of the City of San Francisco were extended throughout a territory known as the County and City of San Francisco. It was simply decided that the territory within which the municipal government was exercised was still a part of the State, and for all purposes other than municipal government subject to the State's control, with the right on the part of the State to authorize the election therein of such officers as may be required to execute its general laws, or to perform such function, disconnected with the municipal government, as may pertain to the government of the State; and that hence the City and County of San Francisco was within the provisions of the county government act declaring what county officers shall be elected, prescribing their duties, and fixing their tenure of office. The fact that such officers of the State lived within the municipality would certainly not prevent their proper designation as State or county officers; and that is, in substance, the effect of the ruling of the Supreme Court of California in the case just cited. It might be conceded for the sake of the argument that the clerk of the city court of Savannah could with propriety be designated as a State or county officer, under the ordinary meaning of those terms, but it does not follow that he could

not with equal propriety, in view of the reasons above given in this opinion, be designated also as a city officer.

The question before us is not entirely free from its doubts and difficulties; but the very existence of a reasonable doubt upon the subject of the constitutionality of an act of the legislature should be an end of the argument. It is a rule of law recognized by all standard authority on the subject, to such an extent that it may be regarded as an elementary principle, that it is the duty of courts to sustain the constitutionality of acts passed by a co-ordinate branch of the government, unless they are plainly and palpably violative of some provision of the organic law of the State, and if there is a reasonable doubt on the subject, this doubt should always be resolved by the courts in favor of the legislative branch of the government. *Carey* v. *Giles*, 9 *Ga.* 253; *Churchill* v. *Walker*, 68 *Ga.* 681; *Wellborn* v. *Estes*, 70 *Ga.* 390; *Howell* v. *State*, 71 *Ga.* 224.

*Judgment affirmed. All the Justices concurring, except Simmons, C. J., and Little, J., who dissented.*

LUMPKIN, P. J., concurring specially. While I have serious doubt of the soundness of what is laid down in the third headnote, I assent thereto, believing it to be my duty so to do under the doctrine stated at the conclusion of the foregoing opinion, viz., that as a rule, doubts as to the constitutionality of a legislative act should be resolved in favor of its validity.

SIMMONS, C. J., and LITTLE, J., dissenting. 1. Even though in an act of the legislature, creating a public office, it is provided that the incumbent thereof shall be elected by, and give bond payable to, the mayor and aldermen of a city within which he is required to perform his official duties, if the duties imposed upon him relate exclusively to matters connected with the administration of some general public function, and in nowise involve the performance of any function connected with the administration of the municipal affairs of such city, a person elected to fill such office is not an officer of such city, and does not fall within the class of persons embraced within the meaning of the term "city officers," occurring in the caption of a subsequent act of the General Assembly, and employed for

the purpose of describing a class of persons intended to be affected by its provisions.

2. The clerk and sheriff of the city court of Savannah are public functionaries whose duties relate exclusively to matters involved in the administration of the general public justice; they are neither authorized nor required to perform any official function connected with the administration of the municipal affairs of the City of Savannah; they are therefore not officers of that city; and consequently the act of the General Assembly approved December 16, 1898, which is entitled "An act to fix the time for the election of all 'city officers' now elected by the Mayor and Aldermen of the City of Savannah, to provide for the terms of such officers, to terminate the terms of those now in office, and for other purposes," in so far as its provisions relate to the terms of office of the clerk and sheriff of the city court of Savannah, contains matter different from that expressed in the title, and is for that reason unconstitutional and void.