### JACOBY *et al.* *v.* DALLIS *et al.*

1. When an answer to a petition for injunction is, though not properly verified, treated as evidence at an interlocutory hearing before the judge, and no objection thereto is then made, it is too late to make, in the Supreme Court, the point that the answer should not, for want of due verification, have been so treated.

2. The act of December 3, 1901, providing for a dispensary in the City of La-Grange, authorized the establishment of the same if a majority of the votes cast in the election to be held under the act should be in favor of the dispensary.

3. There is nothing in this act which violates the constitutional provisions embraced in the Civil Code, §§ 5893, 5897, with reference to the creation of debts by municipal corporations.

4. The act is not void for failure to specifically prescribe the " way for holding " the election, nor because it " makes no provision for the necessary rules and regulations " with respect thereto.

Submitted April 7, — Decided April 26, 1902.

Petition for injunction. Before Judge Harris. Troup superior court. February 28, 1902.

*Hatton Lovejoy* and *A. H. Thompson*, for plaintiffs.
*F. M. Longley*, for defendants.

LUMPKIN, P. J. On December 3, 1901, the General Assembly passed an act to establish a dispensary in the City of LaGrange, the 14th section of which provided that "this act shall not go into effect until it has been ratified by a majority vote of the qualified

voters of the City of LaGrange in the following manner, to wit: Within twenty days after the passage of this act the mayor of the City of LaGrange shall order an election, at which shall be submitted the question of 'dispensary,' or 'no dispensary.' Those voting for dispensary shall have written or printed upon their ballots, 'For dispensary,' and those voting against dispensary shall have printed or written upon their ballots, 'Against dispensary.' Should the result be in favor of or for a dispensary, then said dispensary shall be established in accordance with the provisions of this act." Acts of 1901, pp. 509–510. An election was held on December 21, 1901, and the managers thereof certified that 208 votes were cast "for dispensary" and 170 votes "against dispensary." Thereupon the mayor and council of LaGrange declared that the election was in favor of the establishment of a dispensary, and appointed V. E. Dallis, P. H. Hutchinson, and F. M. Ridley commissioners to establish and maintain a dispensary. Before the same was put into operation, L. H. Jacoby and others filed an equitable petition against these commissioners and the mayor and council of the city, to enjoin the establishment of the dispensary. The case came on for a hearing before his honor Judge Harris, who, after considering the petition and the answer thereto, refused to grant an interlocutory injunction. To this the plaintiffs excepted; and we will now dispose of the questions thus presented for our determination, stating, as we proceed, such other facts as may be essential to an understanding of our rulings in the premises.

1. The first of these questions is one of practice. It was insisted in the argument here that inasmuch as the answer of the defendants was not verified by the positive affidavit of any person, it should not have been treated as evidence. The reply is that it was in fact so treated, as shown by the record; and it does not appear that any point as to the verification of the answer was made in the court below, or that any objection to the consideration of it as evidence was presented to or passed upon by the presiding judge. Doubtless, if such an objection had been made, the proper verification would have been supplied. We therefore do not hesitate, in dealing with the case upon its merits, to treat the answer as evidence, in so far as its allegations tend to the establishment of matters of fact.

2. It is insisted by the plaintiffs in error that a dispensary can

not lawfully be established in LaGrange, because it does not appear that at the election held under the act above mentioned a majority of the qualified voters of that city voted in favor of a dispensary. There are, in an act approved September 18, 1883, "to regulate the manner of holding municipal elections in the City of La-Grange" (Acts of 1882 – 3, p. 387), and also in an act approved December 16, 1901, " to create a new charter for the City of La-Grange" (Acts of 1901, p. 477), certain provisions for the registration of persons desiring to vote in municipal elections in that city. It was accordingly insisted that, whether reference be had to the act of 1883 or to that of 1901 (which, as will have been seen, was approved before the day upon which the election actually took place), it was essential that a registration be had for the election upon the dispensary question ; and the point was made that, as there was no such registration, no means were afforded for determining whether or not the requisite vote was cast in favor of a dispensary. An examination of the acts just mentioned will, however, disclose that the elections for which they provide, and with reference to which registration is required, are elections for municipal officers. It is therefore clear that the provisions of those acts with regard to registration should not be applied to the special election which the General Assembly declared should be held upon the dispensary question. See *Carver* v. *Dawson*, 99 *Ga.* 7. But aside from this, we think the meaning of the dispensary act itself, with reference to this matter, is that the dispensary should be established if a majority of those voting at the special election cast their ballots in favor of a dispensary. We have already set forth the provisions of the 14th section of that act. It provides that it shall not go into effect "until it has been ratified by a majority vote of the qualified voters of the City of LaGrange," but immediately after the words just quoted appear the words, "in the following manner." Provision is then made for the ordering of an election and for the form of the ballots to be used, and the section closes with the words: " Should the result be in favor of or for a dispensary, then said dispensary shall be established in accordance with the provisions of this act." We think it plain that "the result" here referred to was to be ascertained by a comparison between the number of ballots having upon them the words, " For dispensary," and the number of those having upon them the words, "Against dis-

pensary." That is to say, the General Assembly doubtless intended that a majority of the votes cast at that particular election should be decisive as to the result of the same, there being in the act no provision for registration or any hint of a purpose to make registration the test in determining who were qualified to vote at that election. As there were 208 affirmative ballots against 170 to the contrary, the act was duly ratified and should be given effect.

3. In the 3d section of the act it is declared that "all bills incurred for the establishment and maintenance of the dispensary and purchase of stock, from time to time, shall be paid out of the funds of the City of LaGrange, as the mayor and council of said City of LaGrange shall direct." It was, because of this provision, urged that the dispensary act was in conflict with par. 1 of sec. 7 of art. 7 of the constitution (Civil Code, § 5893), which forbids municipalities from incurring (with certain exceptions) any new debt without the assent of two thirds of the qualified voters of such municipalities; and it was further insisted that the act, for the reason stated, also militated against par. 1 of sec. 10 of the same article (Civil Code, § 5897), which declares that "municipal corporations shall not incur any debt until provision therefor shall have been made by the municipal government." It distinctly appears from the allegations in the defendants' answer that, at the time it was proposed to establish the dispensary in LaGrange, the city was out of debt and actually had in its treasury four thousand dollars in cash; and it is in the answer expressly averred that " the city council does not propose to incur any debt on account of said dispensary." It is therefore difficult to perceive how there is the least likelihood of a debt being created against the City of LaGrange by reason of the provision that all dispensary bills shall be paid out of the treasury of that municipality, the more especially in view of the provision also contained in the act to the effect that the manager of the dispensary can sell for cash only, and must every day turn over to the commissioners his actual receipts. The act is not per se unconstitutional because of the provision for the payment of dispensary bills out of the city treasury; for compliance with this provision would not necessarily involve the city in debt. As it is to engage in the dispensary business, the expenses of conducting the same should, of course, be met with municipal funds; but it by no means follows, as the facts of this case most clearly show, that to so discharge its obligations

will necessitate a disregard of the constitutional inhibitions above referred to. This being so, the act is not to be construed as contemplating a violation of our fundamental law ; but, on the contrary, is to be regarded as authorizing the establishment and maintenance of a dispensary only in the event the city is in a financial condition to operate the same without creating, in an unlawful way, any new debt against it.

4. Another attack made upon this act is that it "fails to provide in any way for holding said election — makes no provision for the necessary rules and regulations," and that therefore it is "entirely inoperative, unenforceable, and the election held thereunder is without authority of law and void." It is true that the act does not. undertake to declare how notice of the election therein provided for shall be given, or to prescribe the precise manner in which it shall be held ; but we do not think it was indispensably necessary that the General Assembly should have specifically dealt with these matters of mere detail. On the contrary, the act can, in our opinion, be upheld and given effect by construing its provisions as to the holding of an election to mean that the mayor of the city, who was expressly authorized to fix the time for the holding thereof, should also have power to make his order effective by making the necessary provisions for the holding of an election in the usual and proper way in which such elections as that contemplated by the General Assembly are conducted in this State. In point of fact, the election now under review was ordered within the time prescribed by the act, and it further appears that due notice of the fact that it was to be held and of the purpose thereof was published. The usual preliminaries were therefore fully observed ; and there is no suggestion on the part of those seeking to have the election declared of no effect that it was not conducted in a fair and perfectly regular manner, and therefore failed to bring about a true expression of the wishes of those entitled to vote upon the question submitted. On the whole, we find no reason for disturbing the judgment of the court below.

*Judgment affirmed. All the Justices concurring, except Lewis, J., absent.*