## COOK *v.* THE STATE.

1. The act approved August 15, 1910 (Acts 1910, p. 201), entitled "An act to abolish the city court of Newton; to provide for the disposition of business pending in said court, and for other purposes," is not violative of art. 3, sec. 7, par. 8, of the constitution of this State, on the ground that it contains matter different from that which is expressed in the title thereof, because it provides that such act shall not become operative until an election shall be held and a majority of the qualified voters of the county of Baker (in which Newton is located) shall vote in favor of the abolition of the court.

2. The act mentioned in the preceding headnote is not violative of article 3, sec. 7, par. 17, of the State constitution, which provides: "No law, or section of the code, shall be amended or repealed by mere reference to its title, or to the number of the section of the code, but the amending or repealing act shall distinctly describe the law to be amended or repealed, as well as the alteration to be made," on the ground that it abolishes the city court of Newton without distinctly describing the act which created that court.

3. The act above mentioned is nugatory and ineffectual to abolish the city court of Newton, on the ground that it fails to provide "how the election therein mentioned shall be held, who shall hold it, and to whom the returns of the election shall be made, and whose duty it shall be to declare the result of said election."

JANUARY 22, 1912.

The Court of Appeals certified to the Supreme Court the following questions:

1. "Is the act approved August 15, 1910 (Acts 1910, p. 201), entitled 'An act to abolish the city court of Newton; to provide for the disposition of business pending in said court, and for other purposes,' violative of paragraph 8, of article 3 of the constitution of Georgia, in that it refers to matter different from that which is expressed in the title thereof, for the alleged reason that the following matter is contained in the body of the act: 'Provided, the provisions of this act shall become of full force and effect only when ratified by a majority of the votes cast by the qualified voters of Baker county at an election to be held for the purpose of submitting the provisions of this act to the qualified voters of Baker county for their approval, which said election shall be held on the same date as the general election of State officers of Georgia is held; and those who wish to cast ballots for the provisions of this bill shall do so by casting ballots having written or printed upon them the words 'Against the city court of Newton,' and those who wish to cast ballots in favor of the city court of Newton and against the provisions of this bill shall do so by casting ballots having written or printed on them the words 'For the city court of Newton'? It is contended by the plaintiff in error that this matter is different from what is expressed in the title."

2. "Is said act violative of article 3, paragraph 17, of the constitution of this State, which provides: 'No law, or section of the code, shall be amended or repealed by mere reference to its title, or to the number of the section of the code, but the amending or repealing act shall distinctly describe the law to be amended or repealed, as well as the alteration to be made,' because it undertakes to repeal the act creating the city court of Newton without distinctly describing that act?"

3. "The instruction of the Supreme Court is also desired as to the following question of law involved in the decision of said case: Is said act nugatory and ineffectual to abolish the city court of Newton, because it fails to provide how the election therein mentioned 'shall be held, who shall hold it, and to whom the returns of the election shall be made, and whose duty it shall be to declare the result of said election,' or because no returns of said election were made to the ordinary of Baker county, or because the ordinary of Baker county has not declared the result of said election?"

*W. I. Geer,* for plaintiff in error.

*W. E. Wooten, solicitor-general,* and *F. A. Hooper,* contra.

FISH, C. J. 1. The extent to which the title must go in describing or outlining the act, and the fact that mere incidents or details forming part of the general purpose of the act are not required to be mentioned in the title, has been the subject of frequent discussions by this court. *Nolan* v. *Central Georgia Power Co.,* 134 *Ga.* 201 (67 S. E. 656); *Dollar* v. *Wind,* 135 *Ga.* 760 (70 S. E. 335); *Stanley* v. *State,* 135 *Ga.* 859 (70 S. E. 591). It only remains to apply the principle of those decisions to the case now in hand. This is practically controlled by the ruling in *Mc-Gruder* v. *State,* 83 *Ga.* 616 (10 S. E. 281). We therefore answer the first question propounded by the Court of Appeals in the negative.

2. While in one or two opinions rendered shortly after the adoption of the constitution of 1877 some doubt was expressed as to whether, under the terms of that instrument, there could be a repeal of a law or a part of a law by implication arising from the passage of another law inconsistent with it (*Central Railroad* v. *Hamilton,* 71 *Ga.* 461; *Montgomery* v. *Board of Education of Richmond County,* 74 *Ga.* 41), it has since been determined that article 3, paragraph 17, of the constitution does not prohibit such repeals by implication, although it has been declared that, to work that result, the inconsistency must be plain. *Swift* v. *Van Dyke,* 98 *Ga.* 725 (26 S. E. 59); *Collins* v. *Russell,* 107 *Ga.* 423 (33 S. E. 444); *Verdery* v. *Walton,* 137 *Ga.* 213 (73 S. E. 390). The second question, therefore, is also answered in the negative.

3. The act in question declares in the first section thereof, "That on and after the first day of January, 1911, the City Court of Newton, in the county of Baker, be and the same is hereby abolished." In the beginning of the second section of the act it is declared that all records, papers, books, etc., of such court, and all cases both civil and criminal that may be pending therein at the time the act goes into effect, shall be transferred to the superior court of Baker county. Then follows this language: "Provided, the provisions of this act shall become of full force and effect only when ratified by the majority of the votes cast by the qualified voters of Baker county at an election to be held for the purpose of submitting the provisions of this act to the qualified voters of Baker county for their approval, which said election.

shall be held on the same date as the general election of State officers of Georgia is held; and those who wish to cast ballots for the provisions of this bill shall do so by casting ballots having written or printed upon them the words ' Against the City Court of Newton,' and those who wish to cast ballots in favor of the City Court of Newton and against the provisions of this bill shall do so by casting ballots having written or printed on them the words ' For the City Court of Newton.' " Is this act, in the language of the third question propounded to this court by the Court of Appeals, "nugatory and ineffectual to abolish the city court of Newton, because it fails to provide how the election therein mentioned ' shall be held, who shall hold it, and to whom the returns of the election shall be made, and whose duty it shall be to declare the result of said election' ? " As will be seen, the act fixes the date for the election and the qualification of the voters thereat, as well as the forms of the ballots to be cast, and declares that the act shall become a law if ratified by a majority of the votes cast at the election. There are, however, no provisions whatever in the act as to how the election shall be held, or who shall hold it, or to whom the returns shall be made, or who shall declare the result. Was it the intention of the General Assembly, in passing the act, that the election should be held in connection with, and as a part of, the general election for State officers, and by the managers of such general election, and that the returns should be canvassed and the result of the election be declared in accordance with the law relating to general elections? Or was it the intention that the election referred to in the act, though to be held on the same date as the general election for State officers, should be held by other persons than the managers of such general election, and at different polling places, and that the canvass of the returns should be made and the result declared in a way different from the provisions relating to such matters in the general election for State officers? There is absolutely nothing in the act which enables us to satisfactorily answer either of these questions. We can not believe that the first inquiry we have just stated should be answered in the affirmative, as the holding of the two elections by the same managers, at the same time, would necessarily bring about serious confusion and complication, and the fate of the court might be materially affected by the candidacy of one or more

of those running for office, or, on the other hand, the fate of a candidate might depend on his stand for or against the court. If, on the other hand, the purpose of the act was that a separate election should be held as to the abolishment of the court, we are at a loss to say who should appoint the managers, how the returns should be canvassed, and by whom the result should be declared. There is nothing in the act to indicate that the returns should be made to the ordinary of the county, or that he should declare the result; nor is there anything tending to show that the returns should be made to the board of commissioners of the county, and that they should declare the result. Nor are we aware of any general law authorizing the returns of such special election to be made either to the ordinary or to the board of commissioners, and giving either the power of declaring the result of such election. It is true that the act establishing the board of commissioners for Baker county (Acts 1908, p. 270) gives the power to the board to establish and change election precincts and militia districts, to supply by appointment all vacancies in county offices, and to order elections to fill them, and to supervise county matters. None of these powers, however, is broad enough to authorize the board to appoint managers for the special election referred to in the act under discussion, nor to declare the result of such election, nor to prescribe rules as to whom the returns shall be made, and who shall declare the result. In *Jacoby* v. *Dallis,* 115 *Ga.* 272, the question was raised as to the validity of an act to establish a dispensary in the City of LaGrange. The act provided that "within twenty days after the passage of this act the mayor of the City of LaGrange shall order an election, at which shall be submitted the question of 'dispensary' or 'no dispensary.' Those voting for dispensary shall have written or printed upon their ballots 'For Dispensary' and those voting against dispensary shall have printed or written upon their ballots 'No Dispensary.' Should the result be in favor of having a dispensary, then said dispensary shall be established in accordance with the provisions of this act." The act was attacked because it failed to specifically prescribe the "way for holding" the election, and because it made "no provision for the necessary rules and regulations" with respect thereto. In passing upon these points this court said: "It is true that the act does not undertake to declare

how notice of the election therein provided for shall be given, or to
prescribe the precise manner in which it shall be held; but we do
not think it was indispensably necessary that the General Assembly
should have specifically dealt with these matters of mere detail.
On the contrary, the act can, in our opinion, be upheld and given
effect by construing its provisions, as to the holding of an election,
to mean that the mayor of the city, who was expressly authorized
to fix the time for the holding thereof, should also have power to
make his order effectual by, making the necessary provisions for
the holding of the election in the usual and proper way in which
such elections as that contemplated by the General Assembly are
conducted in this State." The act there under construction, as
will be seen, expressly authorized the mayor to fix a time for the
holding of the election; and it was held that he therefore had au-
thority to make his order effective by making the necessary provi-
sions for the holding of an election in the usual and proper way in
which such elections as that contemplated by the General Assembly
are conducted in this State. If the act providing for the election
as to whether the city court of Newton should be abolished had
conferred upon the ordinary, or the board of county commissioners,
the power of ordering the election and fixing the time within
which it should be held, it would then have come more nearly un-
der the ruling made in the case cited. But this act conferred no
power whatever, as to the election therein referred to, upon the or-
dinary, or upon the board of commissioners. The ruling in *Brooks*
v. *Loganville,* 134 *Ga.* 358 (67 S. E. 940), is somewhat in point. It
was there held that "A general power contained in the charter of a
town to establish and maintain a public-school system by taxation,
without any provision for the submission of the question to a vote
of the qualified voters of the town before it should become effective,
is not a compliance with the constitution [article 8, section 4, para-
graph 1, as amended by the proposal of 1903 (Acts 1903, p. 23)],
and does not authorize the levy and collection of a special tax, al-
though an election may have been held, and two thirds of the per-
sons voting therein voted for the special tax." Such election was
held prior to the passage of the general statute on the subject.
While mindful of the rule that courts will not, if it can be avoided,
hold that the legislature has done a vain thing, yet we are con-
strained, in view of what we have said, to hold that, in our opinion,

the act under consideration is "nugatory and ineffectual to abolish the city court of Newton, because it fails to provide how the election therein mentioned ' shall be held, who' shall hold it, and to whom the returns of the election shall be made, and whose duty it shall be to declare the result of said election.' " The facts, that an election may have been held on the date fixed by the statute under consideration, and that a majority of the votes cast may have been in favor of the abolishment of the city court of Newton, and the result so declared, can throw no light on the question as to the validity of the statute. It is unnecessary to deal with that portion of the third question in reference to the fact that the ordinary had not declared the result of the election.

*All the Justices concur, except Lumpkin and Hill, JJ.*

LUMPKIN, J., dissenting as to the last point decided by the majority of the court. There can be no doubt that the act under consideration is vague, meager, and unsatisfactory. The rule is, however, that courts will not declare that the legislature has done a vain, foolish, or meaningless thing, unless in case of necessity. *Park* v. *Candler,* 113 *Ga.* 647, 688 (39 S. E. 89) ; *Southern Railway Co.* v. *Atlanta Sand & Supply Co.,* 135 *Ga.* 35 (5), 36 (68 S. E. 807) ; *Atlantic Coast Line R. Co.* v. *State,* 135 *Ga.* 545, 561 (69 S. E. 725, 32 L. R. A. (N. S.) 20).

It seems, both from the record and the question propounded, that an election was held; and there is no intimation that it was not held at the time fixed by the act, or that the majority of the votes cast thereat were not in favor of abolishing the city court. The record transmitted to this court shows that the plaintiff in error was placed on trial in the superior court under an indictment which was sent to that court from the city court. On his trial, he set up that the superior court was without jurisdiction, because the act abolishing the city court, and providing for the transfer of its records to the superior court, was ineffectual on account of vagueness and lack of specification. In view of what is said above, and of the terms of the act, and of the general powers conferred upon the county commissioners of Baker county by the act creating the board (Acts 1908, p. 270), I am not prepared to hold that the act of the legislature under consideration was nugatory, and that nothing was accomplished by it or by an election held under it. Nor can I concur in an answer to the question propounded by the

Court of Appeals, which amounts to a ruling that though the city court of Newton has been officially buried for more than a year, like the ruler's daughter, it "is not dead, but sleepeth." *Jacoby* v. *Dallis,* 115 *Ga.* 272 (41 S. E. 611); People *v.* Dutcher, 56 Ill. 144; Wells *v.* Taylor, 5 Mont. 202; McCrary on Elections, § 196.

I am authorized to state that Mr. Justice Hill concurs with me in this dissent.