[Civil Nos. 2964, 2965. Filed July 7, 1930.]

[292 Pac. 603.]

W. A. McDONALD, Appellant, v. COCHISE COUNTY, a Municipal Corporation, and HARLIE COX, JOHN HILD and M. P. WALKER, as Members of the Board . of Supervisors of Cochise County, State of Arizona, Appellees.

JAMES PORTER McDONALD, Appellant, v. COCHISE COUNTY, a Municipal Corporation, and HARLIE COX, JOHN HILD and M. P. WALKER, as Members of the Board of Supervisors of Cochise County, State of Arizona, Appellees.

Mr. D. C. Pace, for Appellant W. A. McDonald.

Mr. Samuel L. Pattee, for Appellant James Porter McDonald.

Mr. James T. Gentry and Mr. Fred Sutter, for Appellees.

Mr. Samuel L. Pattee, *Amicus Curiae,* in Case No. 2964.

GIBBONS, Superior Judge.—This in an appeal from two decisions rendered in the superior court of Cochise county sustaining demurrers to complaints in each action on March 21st, 1930. The questions involved in the two cases being so closely related as to present practically the same issues, they have been considered by respective counsel together in briefs and oral arguments on this appeal, and hence will be considered together in this opinion.

A statement of the facts involved upon which there is no dispute will serve to present the questions for decision. The complaints, in substance, allege:

"That by an act of the Territorial Legislature in 1881 the county seat of Cochise County was located at the City of Tombstone; that a petition praying for the removal of said county seat from said City of Tombstone was filed with the Board of Supervisors of said county prior to the ninth day of September, 1929; that said Board acted on said petition and ordered called an election to be held on the nineteenth day of November, 1929, for the purpose of submitting to the electors of said county the proposition of the removal of said county seat from said City of Tombstone; that at said election the name of the City of Bisbee, and the name of the City of Douglas in said county were submitted to the electors to choose to which one of said two cities the county seat should be removed, if more than sixty per cent. of the votes cast were in favor of removal; that at said election, 8650 votes were cast, 5926 of which were cast in favor of removing said county seat, and 2724 against such removal; that more than a majority of all of the votes cast to-wit, 4609, were in favor of moving said county seat to said City of Bisbee; that after canvassing said votes, said Board entered an order declaring said county seat removed from said City of Tombstone to said City of Bisbee, and ordered and declared that as soon as practicable, all public records be removed to said City of Bisbee, all of which proceedings were had and taken under the provisions of article 12, chapter 16, Revised Code of Arizona, 1928.

"That shortly thereafter, the Superior Court, and the office of the Board of Supervisors, and other public offices and records, were removed from said City of Tombstone to said City of Bisbee, where they have remained and where the business of the county is now, and at the time of the commencement of this action was being conducted.

"It is further alleged in the complaint that at the last preceding election for governor held in said county, 10,199 votes were cast for governor, and that

there appeared on the great register of said county the names of 12,005 qualified electors.

"It is further alleged in said complaint that the order of the Board calling said election was duly published in the minutes of said Board in the official newspaper of said county before the date on which said election was held; that the said Board, in not less than twenty days prior to said election, established a convenient number of election precincts in said county and defined the boundaries thereof, and designated the place within each precinct where such election should be held; and that in not less than twenty days prior to said election, the Board appointed for each of said election precincts so established, an inspector, two judges, and not less than two clerks of election, all of whom were qualified electors of the precincts for which they were appointed; that the said Board prepared and provided ballots containing the matters and things provided for in paragraph 895 of said article 12, chapter 16; that the ballots for said election were printed and ready for inspection at least ten days before said election; that there were printed and furnished by said Board to each polling place, a number of ballots exceeding by at least ten per cent. of the number of registered voters whose names appeared on the precinct register of the precinct for which said ballots were printed; that the polls in said county were open at six o'clock A. M. and closed at six o'clock P. M. on said day of election; and that the election marshal made proclamation of the opening of said polls and of the closing of same one hour and thirty minutes before closing, and fifteen minutes before closing, and at the moment of closing; and that the said Board furnished each polling place with a sufficient number of voting booths and the necessary equipment for the convenience of the voters; that announcement of the date of said election was made in the several newspapers published in the different cities and towns of said county, prior to said election; that only qualified electors whose names appeared on the great register of said county at the last general election in the year 1928 were permitted to vote, and voted at said election; that said Board called an election which was held on

the twenty-fifth day of February, 1930, for the purpose of determining whether bonds should be issued to construct a court-house at said City of Bisbee; and that the said Board has expended and is continuing to expend money to maintain said county seat and county offices at said City of Bisbee.

"It is then alleged in the complaint that said article 12, chapter 16, is ineffective and in violation of the Constitution of the United States, and of the State of Arizona, for the reason that it is complete in itself and unaffected or supplemented by any other statute of the State; that no provision is made therein for giving any notice of said election; that no provision is made therein for the appointment of officers of the board of election, or the manner of holding an election; that no provision is made therein for the registration of the electors who might be entitled to vote at such election, or providing that they may vote without such registration; and that no method of conducting such election is provided for; that because of the above reasons, said acts and things done by said board in removing said county seat are void.

"The defendants demurred to the complaint on the ground that it did not contain facts sufficient to constitute an action in the nature of proceedings in *quo warranto;* and on the further ground that it did not contain facts sufficient to constitute any cause of action.

"Both demurrers were sustained by the Court. The plaintiff refused to amend and judgment was entered dismissing the complaint from which judgment the plaintiff has appealed to this Court.

"By agreement of the parties, the Honorable S. L. Pattee was permitted to argue the case as *amicus curiae;* and plaintiff and defendants also stipulated that he might file a brief in this Court in this case."

In the case of *W. A. McDonald* v. *Cochise County et al.,* the appellant brought an action in *quo warranto* in his own name under the provisions of article 3, chapter 94, Revised Code of Arizona, 1928. As a preliminary step to the bringing of this action, appellant requested the county attorney of Cochise county to bring said action. Upon his refusal he then re-

quested the Attorney General of the state to bring the action. This second request was also refused, whereupon appellant brought suit in his own name. The complaint named Cochise county and Harlie Cox, John Hild and M. P. Walker, as members of the board of supervisors of Cochise county, as parties defendant.

In the case entitled *James Porter McDonald* v. *County of Cochise et al.*, the plaintiff sought in his first cause of action of his complaint to enjoin the board of supervisors of said county from paying out or expending any moneys of the public funds of Cochise county for the maintenance and conduct of the public offices and officers of said county at said city of Bisbee or elsewhere than the city of Tombstone, as also the expenditure of the proceeds of any bonds issued or sold by said county in construction and maintaining a courthouse at said city of Bisbee or any other place than said city of Tombstone. In plaintiff's second cause of action he alleges that a controversy has arisen in respect to the constitutionality of article 12, chapter 16, being sections 892 to 899, inclusive, of the Revised Statutes of Arizona, 1928, and that a declaratory judgment, if rendered, declaring said statute valid or invalid, would terminate the uncertainty of the controversy giving rise to the proceedings. And, in his prayer to said second cause of action, he asks the court to declare said statute unconstitutional, invalid, and of no force. The question of the constitutionality of article 12, chapter 16, was likewise raised in the case of *W. A. McDonald* v. *Cochise County et al.*

For the purpose of designating the two actions they will be referred to in this opinion as the *quo warranto* proceedings and the injunction proceedings.

Only two questions will be considered by the court for the purpose of this opinion in passing upon the question of the ruling of the lower court in sustaining

demurrers to the complaints, first, did the court err in holding that there was a defect of parties plaintiff in the injunction proceedings; and, second, did the court err in holding article 12, chapter 16, Revised Statutes of Arizona, 1928, constitutional?

The first cause of action in the injunction proceeding is one seeking injunctive relief and praying that the board of supervisors be enjoined from expending any county moneys for the maintenance of public offices and officers, for the construction of the courthouse at the city of Bisbee or any other place than the city of Tombstone. The prayer for injunctive relief is predicated on the allegations in the complaint that the order of the board of supervisors made subsequent to the holding of the election referred to in the statement of facts is void because article 12, chapter 16, Revised Code of Arizona, 1928, authorizing the proceedings under which the election was held, is invalid and unconstitutional. This action was brought by appellant as plaintiff in his individual capacity as an elector and taxpayer of Cochise county.

It was the contention of appellees in the lower court and also in this court that appellant ought not to be permitted to prosecute this case in his individual capacity, for the reason that the proceeding constitutes a collateral attack on the order of the board of supervisors locating the county seat and that said question as to the locating of the county seat can only be raised by the state by a direct proceeding by its official representatives and not by an individual under the provisions of article 3, chapter 94, Revised Statutes of Arizona, 1928, which article provides for proceedings in *quo warranto.*

It is clear that the injunction proceedings is a collateral attack on the location of the county seat at Bisbee. A direct attack would be a proceeding in the nature of *quo warranto. Torres* v. *Board,* 15 N. M.

703, 110 Pac. 851. In that case, in which the facts were strikingly similar to those in the instant case, the court says:

"The objection to deciding or attempting to decide a question of this kind was forcibly stated by the court in the case of *Dean* v. *Dimmick,* 18 N. D. 397, 122 N. W. 245, in these words:

" 'But in this proceeding it is not attempted to show that the right which the petitioner seeks to secure is one which affects him in any way peculiar to himself, and from the nature of the controversy we must assume that it only affects him in the same manner as it affects all other taxpayers and citizens of the county, all of whom are interested in the location of the county seat. In such a case we think the matter should not be litigated in this manner. The public has a right to be heard; and, if we desire to determine the constitutionality of the statute in question, and on which the result may depend, we should have to pass upon the rights of the public at the instigation of a private citizen in his personal capacity as a private suitor. In the meantime other proceedings by other private individuals might be instituted, the rights of none of whom would be settled by the decision in this case. Each citizen of the county might see some additional reason why the law should be held constitutional or unconstitutional, and desire to present it to the court.' See, also, *Ashley* v. *Board of County Commrs.,* 60 Fed. 55, 8 C. C. A. 455. . . . The public affairs of Torrance county are being conducted every day at Estancia as the county seat, and that has been the case for five years past. Most acts done in the conduct of those affairs pass unchallenged. Occasionally some act is called in question by a private individual for his own purposes as in the case at bar, but the question of the validity of the statute under consideration will remain without authoritative settlement until it is determined in a direct proceeding."

The case of *Dean* v. *Dimmick, supra,* cited by the New Mexico court, was one wherein the facts were almost identical with the facts in the present case, and the Supreme Court of North Dakota held that a

private individual could not maintain an action to question the validity of a statute authorizing the election to vote upon the removal of a county seat after the election was held and the county seat ordered removed.

The following cases, some of them involving the validity of the removal of county seats, are in point on the question of the right of a private individual to attack the validity of an order removing a county seat.

The great weight of authority is to the effect that courts of equity have no jurisdiction, independent of statute, to enjoin, at the suit of citizens, the proceedings of county officers because of the illegality of the act creating such county, when no question of private right is involved, since the state itself is the only party to institute proceedings to test the franchise of a municipality. And, where a court of equity has entertained jurisdiction and has enjoined officers from exercising their functions upon the grounds of the invalidity of the law creating the county, it may be prevented by prohibition from proceeding with the case; the appropriate remedy being a proceeding in *quo warranto.* High on Injunctions, 4th ed., par. 1249. Moreover the decision of this court would seem to have conclusively settled this question. *Faulkner* v. *Board,* 17 Ariz. 139, 149 Pac. 382; *Howard* v. *Luke,* 18 Ariz. 563, 164 Pac. 439.

Likewise the predecessor of this court so held in *Phoenix Water Co.* v. *Common Council,* 9 Ariz. 430, 84 Pac. 1095, 1096. In the latter case the Phoenix Water Company, a corporation, brought suit in the district court of Maricopa county to restrain the city council of the city of Phoenix from issuing, selling, and disposing of its bonds for the purpose of constructing a system of waterworks for the city. A general demurrer was interposed to the complaint

and sustained. The court in upholding the ruling sustaining the demurrer in part said:

"The determination of this fact is lodged in the discretion of the city officers and of the taxpayers themselves at the bond election. Moreover, the election having been held, in compliance with the law, and the return thereof, lawful in its face, showing that those supporting the issue of the bonds had prevailed by the lawful majority, this return cannot collaterally be attacked for errors or frauds alleged to have occurred in the conduct of the election or in the registration preceding it."

From the above citations of authorities we hold that the court did not err in sustaining the demurrer to the first cause of action of plaintiff's complaint in the injunction proceeding.

The more serious question presented in the briefs of appellants in each of the cases is the question of the validity of article 12 of chapter 16, Arizona Code, 1928. Appellants earnestly contend that this statute is unconstitutional for the following reasons:

"(1) That in providing for the holding of a special election, it makes no provision for giving any notice of such election.

"(2) It provides no machinery for the holding of the election and no mode or manner of holding it.

"(3) It provides for no re-registration of voters or that electors may vote without registration, and thereby deprives those who have become voters since the last general election, of the right to vote, although otherwise fully qualified."

Taking up the assignments 1 and 2 in the order adopted by appellants, we come, first, to the question of the validity of the statute because of the absence therefrom of any provision for the giving of any notice of such election and for the absence therefrom of any provision providing the machinery for the holding of said election. It will be observed that this statute contains all of the provisions in the Code

relative to the change of county seats. It will be further observed that there is no provision therein for the giving of notice of· an election to remove a county seat, and also there is an absence of provisions prescribing the procedure for holding such election and for the registration of voters for the same.

Appellants urge that, because of these omissions, and, further, because the statute is complete within itself and purports to contain all provisions governing such elections, it is so fatally defective that no valid election can be held thereunder. It is urged that the statutes cannot be assisted in supplying these omissions by reference to general provisions appearing elsewhere in the Code; that it must stand or fall alone unassisted by outside aids or implication. It is urged that, since elections are purely creatures of statute, they can only be held legally by strict compliance with the law, and, whenever the law fails to define the method of their conduct and procedure, no valid election can be held.

On the other hand, appellees maintain that the granting of power to do a thing is not to be defeated by the omission to prescribe some of the details for doing it. Applying this latter doctrine to the instant case, it is urged that, since article 12, chapter 16, provides for the holding of elections to change county seats and omits to provide for the appointment of election officers and the giving of notice, these details by implication may be supplied by the board of supervisors. This latter doctrine is amply borne out by the authorities. *State* v. *Burbridge,* 24 Fla. 112, 3 South. 869; *Rodwell* v. *Rowland,* 137 N. C. 617, 50 S. E. 319; *Jacoby* v. *Dallis,* 115 Ga. 272, 41 S. E. 611; *Cohn* v. *Isensee,* 45 Cal. App. 531, 188 Pac. 279; *O'Bryan* v. *Owensboro,* 113 Ky. 680, 68 S. W. 858, 69 S. W. 800; *People* v. *Dutcher,* 56 Ill. 144; *Perkins* v. *Board,* 271 Ill. 449, Ann. Cas. 1917A 27, 111 N. E. 580; *State* v. *Reusswig,* 110 Minn. 473, 126 N. W. 279.

But, as to the specific grounds relied upon by appellants that this statute is unconstitutional in that there is no provision for the appointment of boards of election, there is direct authority given the board to appoint such boards of election in subdivision 3 of section 774, Revised Code of Arizona 1928. This provision is as follows:

"The board of supervisors . . . may . . . establish, abolish, and change election precincts, and appoint inspectors and judges of elections, canvass election returns, declare the result and issue certificates thereof."

Further, as to the manner of holding the election, subdivision 22 of the same section provides:

"The board of supervisors . . . may . . . do and perform all other acts and things necessary to the full discharge of the duties as the legislative authority of the county government."

It seems plain that, if the machinery for holding an election is not provided in article 12, chapter 16, then, under the legislative grant of power under subdivision 22 of section 774, the board of supervisors of Cochise county had the authority to prescribe the manner of holding the election and providing suitable machinery. Under an identical provision of the California Code, the court of that state held in the case of *Comstock* v. *Yolo County*, 71 Cal. 599, 12 Pac. 728, that the board under this legislative grant had the authority to adopt any suitable mode of procedure to hold an election and levy a tax; and it further held that the procedure adopted was suitable and the election valid. In this latter case the County Government Act of California gave the board of supervisors jurisdiction over county roads with authority to levy taxes for construction and repairs. The statute provides that no tax should be levied on any district until the proposition was submitted to the general electors of such district and received a majority vote.

The validity of the election and tax levy was attacked in the courts on the ground that there was no provision in law for the submission to the electors of a proposition to levy a special tax for road purposes, and that no election could be held unless the time and manner of calling and holding it had been authoritatively designated in advance, either by law or by some means which the law had prescribed.

In the present case the board of supervisors of Cochise county, was presented with a petition with the requisite number of names and under the provision of section 892, article 12, chapter 16, praying that an election be called for the purpose of voting on the question of the removal of the county seat, and no question was raised as to the sufficiency of this petition. A notice of the hearing on this petition was given under section 893 of said article, and in all respects said hearing was had on this notice as the statute provides. On the hearing the petition was examined and found sufficient to require the board of supervisors to call an election to determine the question of removal of the county seat. An order was made and entered by said board calling an election on this question, which order was incorporated in the official minutes of the board and published in a newspaper of general circulation; election officers were appointed by the board in conformity with the requirements of the general election laws. There is no question as to the sufficiency of the form of the ballot. Subsequent to the election, the votes were canvassed as provided in section 897 of said chapter 16 and the results declared. No question is raised as to the fairness of the election. Furthermore, as touching the question of notice, it seems that there appeared on the registration books at the last preceding general election the names of 12,005 qualified electors, of these 10,199 were cast at said election for Governor, and that at the election held November 19th, 1929, for

the removal of the county seat a total of 8,750 votes were cast, of which 4,609 favored the removal of the county seat from Tombstone and a majority of said votes cast favored the town of Bisbee as the new county seat. It is not denied that the election was a fair and earnest expression of the will of the people of Cochise county. They said in no uncertain terms that they desired a removal of the county seat. That expression was in no way tainted by fraud or corruption. Can it be said that because of the failure of the statute to provide in detail the procedure of the election and the giving of notice thereof, when such omissions were supplied by the board of supervisors, and when it further appears that the voters generally responded and voted, that the will of the people of Cochise county should be set aside? We think not. A fair reading and interpretation of article 12, chapter 16, Revised Code of Arizona, 1928, when read in connection with subdivisions 3 and 22 of section 774, Revised Code of 1928, is sufficient to justify us in holding that the board had authority to order the election and to declare the results thereof. A fair election and an honest return are paramount considerations as compared to minor requirements which prescribe the formal steps to reach that end. As emphasizing this thought, the expression of this court in the case of *Findley* v. *Sorenson,* 35 Ariz. 265, 276 Pac. 843, 844, is persuasive. The court said:

"Statutes directing the mode of proceeding by election officers are deemed advisory, so that strict compliance with their provisions is not indispensable to the validity of the proceedings themselves, and that honest mistakes or mere omissions on the part of the election officers, or irregularities in directory matters, even though gross, if not fraudulent, will not void an election, unless they affect the result, or at least render it uncertain. . . . The main object of the duties and restrictions imposed on election officers is to afford to every citizen having a constitutional right

to vote an opportunity to exercise that right, to prevent those not so entitled from voting, and to insure the conduct of the election so that the true number of legal votes and their effect can be ascertained with certainty. If these things are accomplished, then to throw out the vote of an entire precinct, or a considerable portion thereof, because the inspectors failed to comply with the statutory regulations, would be a sacrifice of substance to form. In short, a fair election and an honest return should be considered as paramount in importance to minor requirements which prescribe the formal steps to reach that end. Of course, if the statute expressly provides that a failure to observe certain requirements invalidates the vote, the court can do nothing but enforce the law as it is, but, unless there is such a provision, or unless the error or irregularity goes to the honesty of the election itself, it will be generally disregarded.

"The second rule of construction is that in counting the ballots, the determination of the intent of the voter is the question of primary importance. This, of course, is always subject to statutory mandates as to how the voter's intention must be expressed, but, where the statute is silent on this point, the common law is still in full vigor, and the intent of the voter is the controlling factor."

And in another Arizona case the court defines the function of the notice of an election as follows:

"It is not an unusual provision that notice of a coming election shall be published in one or more newspapers for a certain time before election day. The sole purpose of this being to warn the electors that an election is to be held, it is generally held that a substantial compliance with the statute is all that is required." *Hicks* v. *Krigbaum*, 13 Ariz. 237, 108 Pac. 482, 485.

There remains but one point to be considered. Appellants urge that article 12, chapter 16, Revised Code of Arizona, 1928, is unconstitutional because it fails to provide for registration of voters for the removal of a county seat. This question has been

settled by this court in the case of *Abbey* v. *Green,* 28 Ariz. 53, 235 Pac. 150, and needs no further discussion or comment herein.

We conclude that the rulings of the lower court sustaining the demurrers to the complaints in the two cases were correct, and the judgments entered thereon are affirmed.

McALISTER and ROSS, JJ., concur.