ANDERSON *et al. v.* BRUMBY, mayor, for use, etc.

An official bond which fails to meet the requirements of a statute, in that it is given to an officer other than the one to whom it should have been made payable, is not enforceable at the suit of a successor in office of the obligee; nor can an action thereon be maintained by such obligee, if he be not an official authorized by law to institute and prosecute legal proceedings in his representative capacity.

Submitted May 1,— Decided June 7, 1902.

Actions on bonds. Before Judge Lumpkin. Cobb superior court. December 18, 1901.

Citations by counsel, other than those appearing in the opinion: *Atkinson* v. *Crawley*, 112 *Ga.* 485; *Atla. Brew. Co.* v. *Bluthenthal*, 101 *Ga.* 541; *Lester* v. *McIntosh*, Id. 675; *Mayor* v. *Jackson*, 98 *Ga.* 490; *Saffold* v. *Banks*, 69 *Ga.* 289; 1 Dill. Mun. Corp. §§ 55, 123; Dicey, Part. 79, 80; Story, Part. § 221; *Norwich Ins. Co.* v. *Wellhouse*, 113 *Ga.* 970; *Wortsman* v. *Wade*, 77 *Ga.* 651; *Justices* v. *Ennis*, 5 *Ga.* 569; *Crawford* v. *Howard*, 9 *Ga.* 314; *Thomp-*

*son* v. *Hall*, 67 *Ga.* 627; *Lamar* v. *Walton*, 99 *Ga.* 356; *Martin* v. *Lamb*, 77 *Ga.* 252; *Turner* v. *Camp*, 110 *Ga.* 531; *Howard* v. *Crawford*, 15 *Ga.* 423; 24 Am. & Eng. Enc. L. 878.

*Sessions & Moss*, for plaintiffs in error. *D. W. Blair*, contra.

LUMPKIN, P. J.   An action was brought in the superior court of Cobb county by T. M. Brumby, as mayor of the City of Marietta, against R. E. Lawhon as principal, and Saxon A. Anderson and G. S. Owen, as sureties, upon a bond given by Lawhon as clerk of the city council of Marietta, conditioned for the faithful performance of all of his duties as such clerk.   It was made payable to "D. W. Blair, Mayor of said City of Marietta for the time being, and to his successors in office."   The plaintiff alleged in his petition that he was the "successor in office" of D. W. Blair, who was mayor at the time the bond was given, and upon this allegation predicated his right to sue on the bond for the breach thereof which he averred had been made.   The sureties filed a demurrer based on numerous grounds, one of which was that "the bond sued upon and sought to be enforced is shown by said petition to have been made to an obligee other than that designated by the charter" of the City of Marietta, and "for this reason said bond can not be sued upon by a successor."   A wholly independent action was also brought by Brumby, in his representative capacity, against Lawhon as principal, and Anderson and A. Y. Leake as sureties, upon another bond reciting that it was given to "R. N. Holland, Mayor of said City of Marietta for the time being, and to his successors in office," on condition that it was to become inoperative should Lawhon well and truly perform the duties devolving upon him as city clerk.   This action was met by a demurrer precisely like that above referred to.   Still another action, brought in the name of "Thomas M. Brumby, Mayor of the City of Marietta," upon a similar bond, was instituted against Lawhon as principal, and Anderson and J. Paige as sureties.   This bond was made payable to "T. M. Brumby, Mayor of said City of Marietta for the time being, and his successors in office."   The petition filed in this case specifically alleged that: "Petitioner is Mayor of the City of Marietta, and in such representative capacity he brings this suit for the use of the Board of Education of the City of Marietta."   To this petition Anderson and Paige demurred on the ground, among others, that "the mayor of the City of Marietta

in his representative capacity has no authority in law to bring a
suit, . . because the charter creating said office of mayor fails to
confer such authority upon said officer." These three cases are
now before this court for review, having been brought here by sep-
arate writs of error. Each calls for a determination of the ques-
tion whether or not the court below erred in holding that Brumby,.
in his representative capacity, was a proper party plaintiff. We
entertain the view that he was not.

By an act approved January 22, 1852, the "town of Marietta"
was incorporated as a city, and provision was made for the elec-
tion of a governing body to consist of a mayor and six councilmen.
Acts of 1851–2, p. 390.  It was in the 5th section of this act de-
clared "That the mayor and members of the council, as before
mentioned, shall be known, as the Mayor and Council of the City
of Marietta, and by such, their corporate name, shall sue and be
sued, plead and be impleaded, and do all other acts relating to their
corporate capacity." Provision was also made for the election of
a marshal, treasurer, and clerk of council; and in the 10th section
it was declared that these officers should be required to "give bond
and security to the Mayor and Council of the City of Marietta, in
a sum each to be fixed by the Mayor and Council, for the faithful
performance of his or their duties." So it will readily be per-
ceived that the official bond which Lawhon, as city clerk, was le-
gally called upon to make was one payable, not to the mayor of
the city, but to the duly incorporated governing body—"the
Mayor and Council of the City of Marietta." Indeed, it was very
frankly conceded by the able counsel who appeared in this court
in behalf of Mayor Brumby that the instruments upon which these
suits were instituted could not properly be regarded as valid stat-
utory bonds; and the sole contention upon which counsel based the
alleged right to sue thereon was that they were, under the rules of
the common law, enforceable as voluntary bonds.  In this connec-
tion the Political Code, § 263, was cited and relied on.  It declares
that: "Whenever any officer required by law to give an official
bond acts under a bond which is not in the penalty payable and
conditioned, nor approved and filed as required by law, such bond
is not void, but stands in the place of the official bond, subject, on
its condition being broken, to all the remedies, including the sev-
eral recoveries, which the persons aggrieved might have maintained

on the official bond." It does not, however, undertake to prescribe at whose suit such a defective bond is to be enforced. Granting, then, for the sake of the argument, that the provisions of this section were intended to apply to bonds required of municipal officers, it furnishes no aid in determining whether or not Brumby had any right, in his official character, to maintain any one or all of the actions instituted by him in that capacity.

It is undoubtedly true that a bond given by a public officer is not to be considered void merely because it is made "payable to an obligee other than as required by statute." · 2 Am. & Eng. Enc. L. 467. On the contrary, "all such bonds are good as common-law bonds, and may be enforced by suit in the name of the obligees or their personal representatives." Ibid. 467a, note. But "where a bond purporting to be official is made payable to official persons whom the statute does not authorize to become the obligees, the successors of such obligees can not maintain an action on the bond." Ibid. 467, note 10. In support of the proposition last stated numerous authorities are cited. Of these we select as especially pertinent the following: In Stuart v. Lee, 3 Call (Va.), 422, it appeared that a statute of Virginia prescribed that the official bonds required of sheriffs should be made payable " to the Justices." The bond sued on was made payable to Governor Randolph. His successor in office, Governor Lee, sought to enforce it, but the court held that he had no right to sue thereon. It was in the case of White v. Quarles, 14 Mass. 451, ruled that a bond given to a probate judge and his successors in office could not be enforced by the probate judge who succeeded him, the reason assigned being, that, as the bond was not executed in conformity to statute, the plaintiff had no legal interest therein. The Supreme Court of Alabama, in the case of Calhoun v. Lunsford, 4 Porter, 345, held that: "No action can be maintained by the successor of a judge of the county court upon the bond of an assessor and collector of taxes, made payable to the judge — such bond, by statute, being required to be made payable to the Governor." The bond sued on was made payable to "Richard S. Clinton, Judge of the County Court of Dallas county, or his successors in office." In discussing the question whether his successor, Judge Calhoun, could lawfully maintain an action upon such a bond, Chief Justice Hopkins, who pronounced the judgment of the court, said (pp. 346 – 7): "A judge of a county court has

corporate powers so far as to enable him to discharge his official duties. The successor in office of such a judge would be entitled to an action upon any contract that the judge was authorized to make, and had entered into in his official capacity, and upon which the judge would have a right of action if he had continued in the office. But it was not necessary for Judge Clinton to take the bond in this case payable to himself to enable him to perform any official duty which was required of him. His duties in relation to the official bond of the assessor and tax-collector were definite. He was required to fix the penalty of the bond, to approve it, and cause it to be recorded in the office of the clerk of his court. In taking the bond payable to himself, he acted in his natural capacity; and although the bond was made payable to him as the judge of the county court of Dallas county, or his successors in office, yet, as he had no authority to take it to himself in his official capacity, the legal effect of the bond is the same that it would be if his official character had been omitted in the bond."

In Hibbits *v.* Canada, 10 Yerg. 465, a suit brought by the personal representatives of one James Hibbits, upon a bond made payable to him and to his successors in office, was held by the Supreme Court of Tennessee to be maintainable, the conclusion reached by that court being stated as follows: "An administration bond made payable to the chairman of the county court and his successors in office, instead of the Governor of the State as required by law, can not be sued upon by the successor in office, but is a good voluntary bond, and suit may be brought upon it in the name of the original payee, or his personal representative, if he be dead." A similar ruling was announced in the case of Jones *v.* Wiley, 4 Humph. 145. The Supreme Court of Maine had under consideration, in Lord *v.* Lancey, 21 Me. 468, an obligation like that referred to immediately above, and seems to have entertained no doubt that the successor in office of the payee named therein had no right to sue upon it. Another case directly in point is that of Stevens *v.* Hay, 6 Cush. 229, in which Metcalf, J., reviews the leading authorities on the subject. See, also, Governor *v.* Twitty, 1 Dev. (N. C.) 153. Clearly, where a bond required by statute is improperly made payable to a public officer who is without power in his official capacity to sue thereon, his successor in office can, in his official capacity, have no greater authority in the premises. It

is to be borne in mind that, as a general rule, a public official has no right, as such, to maintain a suit of any character. Accordingly, it is only where, by express statute, he is constituted a corporation sole, and is given the right to sue or is made subject to suit, that he can properly be regarded as having any standing whatever in a court of justice. Overseers v. Sears, 22 Pick. (Mass.) 126.

As remarked above, an official bond is not void merely because given to an officer other than the one to whom, under the provisions of a statute, it should have been made payable; and where such obligee has authority to institute legal proceedings in his representative capacity, such a bond is enforceable at his instance. The Justices v. Smith, 2 J. J. Marsh. 472; Sweetser v. Hay, 2 Gray, 49. But this is necessarily otherwise when he is clearly without such authority and therefore can not become a proper party plaintiff. In that event the bond may, perhaps, be construed as an obligation given to the payee in his individual capacity, and enforceable by a suit brought in his name and right as a private citizen for the use of the person or persons aggrieved by a breach thereof. See Iredell v. Barbee, 9 Ired. 250; Fitts v. Green, 3 Dev. 291, 296; Williams v. Ehringhaus, Id. 297; Hibbits v. Canada, 10 Yerg. 465. This is, however, a matter which we are not now called upon to decide. Suffice it to say that all three of the actions instituted by Brumby were avowedly brought by him in his representative capacity as mayor of the City of Marietta. The act incorporating that city certainly did not confer upon its mayor any of the powers incident to a corporation sole; and, so far as we are informed, there is no law of force in this State authorizing that official to maintain an action of any sort under any circumstances whatever. This court is fully committed to the proposition that no suit can be lawfully prosecuted save in the name of a plaintiff having a legal entity, either as a natural or as an artificial person. See *Insurance Co.* v. *Inman Park Church*, 111 *Ga.* 677, and cit.

The views above expressed in no way conflict with the decision rendered in *Stephens* v. *Crawford*, 1 *Ga.* 574, and followed in another case between the same parties, reported in 3 *Ga.* 499. The bond then under consideration was, as it should have been, made payable to the Governor of this State and his successors in office; and it was in all respects a good statutory bond, save that it was not given within the time prescribed by law. Suit thereon was in-

stituted in the name of Governor Crawford as the successor of Governor McDonald, who was in office at the time it was executed. The court held that, as this bond was properly made payable to the Governor and his successors in office, an action thereon by Crawford was maintainable, he having in his representative capacity authority to prosecute suits of this character, and the makers of the bond being therefore estopped from questioning his right to sue thereon in accordance with its express terms. It was further held that, as it was enforceable only as a voluntary bond, the rules of the common law applied, and accordingly there could be but one recovery thereon. This is now otherwise under the Political Code, § 263, the provisions of which we have hereinbefore quoted, which expressly authorizes "the several recoveries" which might formerly be had upon an official bond executed in strict conformity to statutory requirements. The doctrine established by the two decisions last above mentioned is simply this: A bond made payable to a public official who is authorized by law to enforce by suit obligations of that character may likewise be enforced by his successor in office, if the bond so stipulates; but the remedy to be pursued in case the bond does not conform to all statutory requirements is, not that pointed out by statute as applicable to obligations given in strict compliance therewith, but that afforded by the rules of the common law. This doctrine was recognized and given effect by the Supreme Court of Tennessee in the case of Polk *v.* Plummer, 2 Humph. 500, in which Reese, J., filed an elaborate and well-reasoned opinion. When the obligee of a voluntary bond is a public official who has been by law constituted a corporation sole, there can be no impropriety in entertaining a suit thereon instituted by him or by his successor in office; but it is quite another thing for a court to ignore the settled policy of the law by giving countenance to a suit filed in the name of a public servant who is legally incapable, as such, of maintaining an action of any description. Accordingly, we do not feel authorized to give our sanction to the further prosecution of the legal proceedings instituted in the court below with a view to recovering on the three bonds under consideration, which, because of apparently inexcusable ignorance and neglect of duty on the part of the municipal authorities, have given rise to useless, annoying, and expensive litigation.

*Judgment in each case reversed. All the Justices concurring, except Lewis, J., absent.*