22489. NATIONAL SURETY COMPANY *v.* SEYMOUR.

DECIDED NOVEMBER 23, 1932.

*Shackelford & Shackelford,* for plaintiff in error.

*J. T. Sisk,* contra.

PER CURIAM. By agreement between the parties, Judge Blanton Fortson, judge of the superior court of Clarke county, Georgia, passed upon all the issues of law and fact arising in an action brought by A. A. Seymour against National Surety Company. Af-

ter allowing an amendment to the original petition, over objection of counsel, and after overruling the general and special demurrers to the petition as amended, and after both parties had introduced evidence, Judge Fortson rendered a judgment in favor of the plaintiff for $426.65 principal, $75 attorney's fee, and the costs of court.

The original petition in the case is substantially as follows:

1. "Petitioner was duly appointed a short-term fertilizer inspector of the State of Georgia by the then Commissioner of Agriculture . . , J. J. Brown, for the term of two years, from October 1, 1926, to October 1, 1928."

2. "Petitioner is due the sum of $333.32 as salary as such . . inspector for the year 1928."

3. "Eugene Talmadge was duly elected Commissioner of Agriculture . . for a term of two years beginning June 25, 1927, and ending June 25, 1929. . ."

4. "Talmadge qualified for said office for said term by taking the required oath and 'giving the bond required by law, signed by National Surety Company . . as surety.'"

5. "Said bond is a joint and several bond, and is conditioned that said Talmadge is 'to faithfully and truly perform all the duties of his office.'"

6. "A correct copy of said bond, marked Exhibit A, is attached to the petition."

7. "Upon assuming the duties of his office, said Talmadge immediately 'discharged petitioner . . without cause, notice, hearing, or trial on any charge or charges preferred against him, and failed and refused to pay his salary as such short-term fertilizer inspector.'"

8. "Said discharge . . was unlawful, wrongful, and in bad faith, and a breach of the official bond of Eugene Talmadge, commissioner as aforesaid."

9. "In a certain mandamus proceeding . . in the superior court of Telfair county . . , the right of petitioner to have and recover said salary . . was finally adjudicated."

10. "Petitioner has been forced to litigate his said claim in the superior court of Talfair county . . against said Eugene Talmadge, commissioner as aforesaid, to assert and establish his claim, and the same was by said Talmadge carried . . to the Supreme Court . . three times, and each time decided in favor of peti-

tioner. . . Such litigation and the present suit have been prosecuted by petitioner and expense for attorney's fees, traveling expenses and subsistence, and of the reasonable value of $300, . . for which said sums he sues."

11. "National Surety Company 'is a corporation duly organized and existing under and by virtue of the laws of the State of New York.'"

12. "Said surety company, 'herein named as defendant, has an agent in said county upon whom service of this petition and process may be perfected.'"

"Wherefore petitioner prays that process issue requiring said National Surety Company to be and appear at the next term of this court to answer this complaint, and that petitioner have judgment against said defendant for the sums aforesaid."

It appears, from the copy of the bond attached to the petition, that Eugene Talmadge, as principal, and National Surety Company, as surety, are jointly and severally bound unto L. G. Hardman, Governor, in the sum of $50,000, on condition that "if . . Eugene Talmadge shall faithfully and truly perform all the duties of his office, and shall pay over and account for all funds coming into his hands by virtue of his said office of Commissioner of Agriculture . . , as required by law, then this obligation to be void, otherwise to be and remain in full force and virtue."

Over defendant's objection hereinafter set out, the court permitted the original petition to be amended as follows: (1) "Petitioner has been injured and damaged in the sum of $333.33, as set forth in the original petition, besides interest thereon . . , costs, and expenses of litigation, by reason of the failure of the said Eugene Talmadge, as Commissioner of Agriculture, to faithfully and truly perform all the duties of his said office according to law, in that the said Talmadge as such commissioner, during the term of office of petitioner in the year 1928, persistently and continuously refused to recognize petitioner as a short-term fertilizer inspector, and refused to furnish petitioner with containers and other supplies for discharging the duties of said office, and so refused continuously until the expiration of the term of office of petitioner, to wit, September 30, 1928, and to pay him the salary incident to the said office." (2) "That since January 1, 1928, under the provisions of law, it has been the practice and duty of said Tal-

**112**

madge as Commissioner of Agriculture to make requisitions monthly on the Governor for warrants to be drawn by the Governor on the Treasurer of said State, payable to said Talmadge as such commissioner, for the expenses of his department for the month, including the salaries of short-term fertilizer inspectors; and on the said warrants the said Talmadge has drawn said funds and monies from the treasury of said State, which said funds included four months' salary due petitioner as short-term fertilizer inspector during the year 1928, at the rate of $83.33 per month for four months, same being the salary due petitioner and incident to his said office." (3) "Having received said money and salary . . in the manner aforesaid . . , it became and was the duty of said Talmadge, as commissioner aforesaid, to pay the same to petitioner monthly as drawn by him, and a failure to so account to petitioner is a breach of the bond sued upon . ." (4) "That . . since January 1, 1928, the said Talmadge as commissioner aforesaid has refused to pay over to petitioner the salary incident to his said office." (5) "That if the appropriation for the payment of the salary of petitioner was not withdrawn from the treasury by said Talmadge . . , the same has, by his refusal to draw and pay the same, reverted by law to the general funds of the State and are no longer available for the payment of the amount due petitioner." (6) "That said monthly salary was due to be paid to petitioner monthly, for the months of February, March, April and May, 1928, and was worth the sum of seven per centum per annum from the date each was due." (7) "That the bond, a copy of which is attached to the petition, is the bond given by the said Eugene Talmadge as Commissioner of Agriculture of the State of Georgia, and was so given by him to comply with the law requiring him to give bond as such officer, and was the only bond given and filed by him as such officer, and is the bond under which he served as Commissioner of Agriculture of the State of Georgia." (8) "Petitioner has been further damaged in the sum of $200 by the said breach of said bond, in that he has been forced to litigate this claim and has incurred attorney's fees in that sum, the service of an attorney to prosecute said claim being reasonably worth said sum and being a part of the expense of litigation herein."

The objection to the allowance of the foregoing amendment is as follows: "It attempts to set up a new cause of action. That

in the original petition it is claimed that under paragraph 2 it was a suit for $333.32 as salary as short-term fertilizer inspector; that a suit for salary is a materially different kind of suit from a suit for damages on account of misconduct or nonperformance of duties of the Commissioner of Agriculture. The first paragraph says that petitioner has been injured and damaged as set forth in the original petition. This is a different kind of suit, and we object on that ground."

■ Considering the original petition as a whole, we are satisfied that it is a suit for damages for a breach of the bond. We are further of the opinion that said amendment does not change the nature of the original cause of action. Therefore we hold that the amendment was properly allowed.

■ It is next urged that the court erred in overruling the following motion of plaintiff in error: "Under section 2553 of the Code, suit should have been brought in Telfair county, the residence of the obligor, Mr. Eugene Talmadge, and for that reason we move to dismiss the suit." Section 2553 of the Civil Code (1910), providing that a fidelity insurance company "shall be subject to be sued on such bonds or obligations in the county of the residence of the principal in such bond or obligation," is merely cumulative of the provision of section 2563 of the Civil Code, that the insurance company may be sued in any county where it "may have an agent or place of doing business." There is no merit in this assignment. See *Morris* v. *George, 3 Ga. App.* 413 (59 S. E. 1116).

■ We come next to consider the exception to the judgment overruling the general and special demurrer to the petition as amended. The part of the demurrer designated "general" is substantially as follows: (1) The petition as amended sets out no cause of action. (2) "The bond . . is not a statutory bond, not being given under the statute, and petitioner is not a party to the same . . and . . has no legal right of action on the same." (3) "If said bond be construed as a common-law bond attempting to comply with the terms of the statute, suit on the same can only be brought by the Governor for the use of the plaintiff, and . . must be brought by the consent of the Governor." (4) "If said bond be construed as a voluntary bond, it was given for the protection and benefit of the State, and plaintiff has no privity thereto and no interest therein, and can not maintain suit on same." (5) "The

■

bond was not given under any statute, and is therefore not a statutory bond and not an official bond, and . . plaintiff is not permitted to sue for expenses and attorney's fees, as such expenses are only recoverable by virtue of a statute when a statutory bond is declared on. Where the bond is not a statutory bond, only the strict terms of the bond govern, and no expenses and attorney's fees can be recovered." (6) "The act of the legislature approved August 3, 1927, requiring the commissioner to give bond, . . could only apply to the next term of that office. . . Commissioner Talmadge, having been previously elected, and inducted into office June 25, 1927, when no bond under the law was required of him, could not be required by a subsequent act . . to give a bond in the office already held by him. · . . The said act was retrospective and ex post facto, and void as far as it required a bond for the then office." (7) "Since the act of 1927 the Commissioner of Agriculture has no authority to pay plaintiff any amount as salary, or otherwise, for the year 1928, but . . all such payments must be made by the Governor on his warrant, and . . there was no breach of the bond on the refusal of the commissioner to pay such salary monthly, and . . plaintiff could sustain no injury as long as said salary is due him by the State, there being no allegation of insolvency." (8) "The petition alleges that plaintiff was illegally discharged, and that the same was nugatory and void, and that he was still the legal inspector, and entitled to his salary from the Governor. . . Said discharge of him, however, was a breach of the bond. If said action of the commissioner was null and void and did not displace him, then same was not a breach of the bond. . . The petition and amendment fail to set out how, or in what manner, this void act resulted in actual damages to him and was a necessary consequence of said alleged breach and nugatory act."

The amended petition in this case tracks very closely a petition which was held good in the recent case of *Talmadge* v. *McDonald*, 44 *Ga. App.* 728 (162 S. E. 856) ; and in our opinion that case is direct authority for holding that grounds 1 to 5, inclusive, of the general demurrer are without merit. We are also of the opinion that ground 6 of the general demurrer is not meritorious. The legislature had plenary power to enact the law requiring the commissioner to give a bond (in this connection see *Collins* v. *Russell*,

107 *Ga.* 423, 426, 33 S. E. 444), and the only bond given by the commissioner, and the one under which he was operating, was a bond substantially the same as the bond subsequently required by the act of 1927. In this connection see *Talmadge* v. *McDonald,* supra. There appears to be no merit in grounds 7 and 8 of the general demurrer.

We shall next set out the substance of the special grounds of the demurrer to the amendment to the petition:

(1) Paragraph 1 contains a number of distinct and unrelated allegations and unwarranted conclusions, and "should be divided so that same might be admitted or denied, or else stricken." "It is not stated what funds or money Talmadge received and failed to pay over, nor to whom same should have been paid, nor does it state to whom he failed to account. . ." (2) "The second paragraph should be stricken on the ground that 'the provisions of law' referred to are not set out. . . The 'practice' of the commissioner is irrelevant and immaterial." (3) "The third paragraph fails to allege that the law required the commissioner 'to pay over and account for all the funds coming into his hands' to any particular person. It does not appear clearly whether it was his duty to pay over and account for all funds coming into his hands to the petitioner or to the Governor." (4) "Paragraph 4 should be stricken on the ground that it is the duty of the Governor to pay any salary to plaintiff, and not the duty of the commissioner." (5) "The fifth paragraph of the amendment is a denial of all the preceding paragraphs, and the allegation that the funds, because not drawn, have reverted to the general funds, is a mere conclusion of the pleader. . . The same is immaterial and irrelevant, since all funds since the Neill act are paid into the general treasury, but are subject to the warrant of the Governor."

A careful consideration of said amendment, which has hereinbefore been set out, satisfies us that there is no merit in any ground of the foregoing special demurrer.

■ The gist of the next demurrer, filed to the petition as amended, is that plaintiff was appointed as a short-term fertilizer inspector under the Civil Code (1910), § 1780; that he did not hold his office for any fixed period of time, but was subject to be discharged by the Commissioner of Agriculture without notice or hearing; and that the discharge of the plaintiff was not a breach

116

of the bond. In *Talmadge* v. *Seymour*, 167 *Ga.* 601 (146 S. E. 473), the Supreme Court said: "Inasmuch as the provisions in the act of the legislature providing for the appointment of fertilizer inspectors, their duties, compensation, etc., approved August 19, 1912 (Georgia L. 1912, p. 52), are the same both for the 'general inspectors' and the 'short-term inspectors,' in so far as they relate to the term for which the appointees shall be commissioned and the grounds upon which they may be 'discharged,' this case is controlled by the decisions in *Talmadge* v. *Cordell*, ante, and *Talmadge* v. *McDonald*, ante." Paragraph 5 of the decision in *Talmadge* v. *Cordell*, 167 *Ga.* 595 (146 S. E. 467), reads: "The relator, being a quasi public officer commissioned for the definite term of two years, was not subject to removal by the Commissioner of Agriculture, except upon cause shown with notice and opportunity to be heard. *Coleman* v. *Glenn*, 103 *Ga.* 458 (30 S. E. 297, 68 Am. St. R. 108); *Ledbetter* v. *Reese*, 148 *Ga.* 633 (97 S. E. 669); *Holder* v. *Anderson*, supra." The rule stated was applied in *Talmadge* v. *McDonald*, supra. Under authority of the cases cited, we hold that the trial judge did not err in overruling the demurrer under consideration.

■ Error is next assigned upon the refusal of the court to make the Governor and the Treasurer of the State of Georgia parties in the case. There is no merit in the exception.

■ The next exception is to the final judgment in the case, which judgment is as follows: "The above-stated case having been, by agreement of counsel therein, submitted to the court, to pass upon all questions of law and fact . . , now . . it is considered, ordered, and adjudged by the court that the plaintiff, A. A. Seymour, do have and recover of the defendant, National Surety Company, the sum of $426.65, and the further sum of $75 attorney's fees herein, this judgment, however, fixing attorney's fees for the present case only. It is further ordered that plaintiff . . recover of the defendant . . costs for the use of the officers of court."

In view of the extreme length of the answer, with the two amendments thereof, we shall content ourselves with stating the specific reasons set out in the bill of exceptions why the final judgment was erroneous, and discussing them in the light of the evidence and the law. We quote from the bill of exceptions:

"Plaintiff in error specifies particularly that the court committed error in said ruling and judgment: 1. 'Because the evidence showed that A. A. Seymour had suffered no loss—that his entire time was employed at a greater remuneration.' 2. 'Because the commission of A. A. Seymour showed on its face that he held this office during the pleasure of the commissioner, and this commission came into evidence for the first time, and was not presented in evidence in the other petitions, and in the case of A. A. Seymour decided in the Supreme Court and the Court of Appeals.' 3. 'That the evidence showed in this case for the first time that A. A. Seymour was not discharged without notice, but was given a full hearing, and that he enjoined this hearing.' 4. 'That not only was the hearing enjoined, but an order granted seeking to hold up the decision in the matter until quo warranto case in Madison superior court was heard and determined.' 5. 'That all the evidence demanded a verdict for the plaintiff in error; that said decision was error for the reason that the bond sued on was not a statutory bond, but was a voluntary bond at best, and under such a bond no attorney's fees could be recovered, and that the same could not be sued on by any person except the obligee.' 6. 'That said decision was contrary to law on the additional ground that said bond was exacted of the said Eugene Talmadge . . by the Governor before any commission could be issued to him, and at the time when the law did not require any bond, and that therefore the bond was null and void.'"

In this connection, it becomes necessary to advert to the evidence in the case. Several attorneys at law testified in effect that the services rendered by the attorney at law for Mr. Seymour in the present case were worth a sum exceeding the amount of the judgment for attorney's fees. Mr. A. A. Seymour testified in substance that he served four years as a short-term fertilizer inspector under Commissioner Brown in 1927, but that he was notified by Commissioner Talmadge that his services were no longer needed, and did not serve as inspector in 1928; that witness was notified that his office had been given to B. L. Bullock, and that Bullock took up the duties of the office; that witness brought quo warranto proceedings against Bullock, and brought an injunction against Mr. Talmadge. Mr. Seymour further swore: "This work as fertilizer inspector was done starting February 15 and ending June

15, as I recollect. I worked my farm labor and had charge of my hands . . I went right straight on when Mr. Talmadge did not think he could keep me, and looked after my business. I suppose I came into the possession of what I made, and I had possession of the corn and crops, if there were any, in the year 1928. I never received any compensation as short-time fertilizer inspector in 1928. As to whether a man with a farm the size of mine is worth $83 a month to himself depends altogether on conditions and what you get out of your farm. I am possibly worth as much to myself on the farm as I would be to Eugene Talmadge, inspecting fertilizer. I think I demanded money from the Governor later on. . . I never went to see Mr. Talmadge and demanded any money from him. . . When I got this notice from Mr. Talmadge . . I did not at that time demand a hearing from him of my case."

Mr. Talmadge testified: that he succeeded Mr. J. J. Brown as Commissioner of Agriculture, and was inducted into office on June 25, 1927; that he appointed forty inspectors to take the places of those Mr. Brown had appointed; that the attorney-general advised him that he had a right to take this action; that among the inspectors appointed by him was Mr. Bullock; that when witness first went into office he "mailed a notice to each one" he "had a record of in the office" that he "would give them a hearing, if they desired, in the office, and to notify him," and that "in the absence of that, they were discharged;" that witness did not hear from a single inspector, and that he "went ahead and made the appointments;" that Mr. Seymour protested about two weeks after Mr. Bullock went to work; that while the quo warranto proceedings were pending, witness prepared a notice to serve on Mr. Seymour "to come to the office at a certain time for a hearing," and thought he got the notice; that Mr. Sisk, plaintiff's attorney, got witness to delay the hearing, and on the next day witness "was enjoined from having a hearing;" that "along the last of the season" mandamus suits were filed in Telfair superior court; that before witness could get a hearing "the time was out for them to do the work;" that witness sent to Governor Hardman "a list of the appointees to take the place of the old inspectors;" that the Governor and witness "agreed that Bullock should be paid by the Governor approving the requisition," and that "he approved it;" that witness did not know of any objection made by Seymour to witness "paying the salary

over to Bullock," unless the quo warranto proceedings and the injunction could be construed as such objection; that "Bullock notified us about this quo warranto . . and we defended him;" that Governor Hardman suggested. to witness that he voluntarily give a bond, and witness said that he "would be only too glad to cooperate;" that when he went to be sworn into office the Governor asked him if he had given the bond, and that when witness said he had, the Governor administered the oath of office and gave witness his commission.

Mr. Talmadge further swore: "Subsequently to that time [when he gave notice to Commissioner Brown's appointees] I have never recognized any of these as being inspectors and never paid any of them the salaries. I appointed other inspectors to succeed each of these forty men and paid them the salaries that would have been paid to these forty discharged men. . . The short-term men, it is absolutely with the Commissioner of Agriculture whether they work one day or four months. . . The salary of the short-term inspectors . . is of course fixed by law. When they work a month I draw a requisition on the Governor for $83. The Governor draws a requisition on the State Treasury. The warrant he draws on the treasury is approved by the Attorney-General, and is signed by the Treasurer and sent to me. . . They send the bulk warrant. That is what happened in 1928. . . I disbursed and drew the checks. These funds that I drew on those warrants were not paid to A. A. Seymour or any other short-term fertilizer inspectors. I could not pay it to them. I had to pay according to the requisition. . . Mr. Brown raised the issue himself at a joint debate. He made the statement the first of October that he was going to name the employees of the Department of Agriculture for the next two years. I knew it was fundamentally wrong, and I said: "If you do, I will fire them." That was at the bottom of my firing. . . That was the only bond that I ever signed. . . The State pays the premium on the bond. . . I understand that is the same bond that I acted under in 1927."

Plaintiff introduced in evidence the bond signed by Mr. Talmadge as principal and National Surety Company as surety, on June 27, 1927, conditioned as hereinbefore stated.

There was next introduced in evidence a certified copy of a judgment rendered by Judge Eschol Graham in the case brought by

A. A. Seymour et al. against Eugene Talmadge, Commissioner of Agriculture, in Telfair superior court; which judgment was as follows: "The Supreme Court of Georgia in the above-stated case having affirmed the decision of this court with direction, it is . . adjudged that the judgment of the Supreme Court . . be . . made the judgment of this court. It having been found that each of the plaintiffs in said case is entitled to recover the sum of $333.32, it is . . adjudged that each of said plaintiffs do have and recover said several sums, and that same be paid as provided by law in such cases. The Supreme Court having further decided that it is not the duty of the Commissioner of Agriculture to draw warrants for salaries accruing subsequent to January 1, 1928, and it being admitted by the plaintiffs that such salaries became due subsequent to January 1, 1928, a mandamus absolute against the defendant is hereby denied. . . Done this April 12, 1930."

We next find in the record the commission issued to A. A. Seymour by Commissioner Brown on February 11, 1927, the material part of which is as follows: "You are hereby authorized and required to do and perform all and singular the duties incumbent on you as inspector of commercial fertilizers in force from October 1, 1926, until October 1, 1928, or until you are removed at the pleasure of the Commissioner of Agriculture; such term not to exceed four months in any one year during the term for which you are hereby appointed, and to be designated by the Commissioner of Agriculture."

The defendant introduced in evidence "fourteen letters written by J. F. Sisk, attorney at law for A. A. Seymour, to Governor L. G. Hardman, and replies thereto; also letter from T. R. Gress, Assistant Attorney-General; and also letters written by Eugene Talmadge, Commissioner of Agriculture, to H. E. Cliatt, R. L. Russell, T. M. Zellars. The contents of these numerous letters we deem it unnecessary to set out. There was next introduced in evidence "the original commission issued by Governor L. G. Hardman to Eugene Talmadge as Commissioner of Agriculture for the State of Georgia, dated June 25, 1927, and being in the usual form." Defendant introduced in evidence "the petition for quo warranto filed by A. A. Seymour et al. against B. L. Bullock . . in Madison superior court February 23, 1928, wherein petitioner set up" that he was the duly appointed short-term fertilizer inspec-

tor; that Mr. Talmadge had disregarded his commission and appointed B. L. Bullock in his stead; and it was prayed that quo warranto issue calling on Bullock to show cause why he should not be ousted from office. It appears from the record that on September 8, 1931, the case was "dismissed for want of prosecution." Defendant introduced in evidence a certified copy of a petition for injunction filed by A. A. Seymour in Fulton Superior Court on March 8, 1928, averring that "it is the intent and purpose of said Talmadge, commissioner as aforesaid, to arbitrarily, without due process of law, and without proper and legal notice and opportunity to be heard, to try and discharge petitioner from his office." Paragraph 5 of said petition avers that on March 1, 1928, Seymour received a telegram from Mr. Talmadge, wherein he was told to appear in the offices of the Department of Agriculture at noon on March 3, 1928, to show cause why he should not be discharged "on the ground of incompetence, neglect of duty, and malfeasance in office;" and that on March 2, 1928, petitioner telegraphed Mr. Talmadge, stating that he was ill, and asking that the hearing be postponed for a week, and that he be furnished with a copy of the charges against him. Paragraph 6 of said petition avers that on March 2, 1928, Mr. Talmadge wired petitioner that the case would be continued until noon, March 7, 1928, "solely on account of your illness," and that "if special demurrer is filed, specific charges will then be furnished to you in writing." Paragraph 20 of said petition avers that "since the bringing of the charges aforesaid . . . , the said Eugene Talmadge has amended his said charges," but that said charges as amended "are insufficient in law to put him upon notice of the charges he is called upon to answer." The amendment referred to appears to have been made on March 7, 1928. The material part of it is as follows: "Defendant is charged with incompetency, etc., in that defendant refused and failed to furnish the Commissioner of Agriculture correct reports on samples of fertilizer taken during the season of 1927 in general, and in the following specific instances reports were inadequate and incorrect: Inspection reports 7, 20, 13, 58, 63, 77, 113, 120, all these numbers being under the letter 'hh,' under which letter the said A. A. Seymour numbered his reports on fertilizer during the season of 1927."

On March 15, 1928, the judge of the superior court entered substantially the following judgment: "Temporary restraining order

122

heretofore granted is dissolved; this court being of the opinion that it is without jurisdiction . . of the person and of the subject-matter. A supersedeas, however, is allowed on the condition that a certain quo warranto proceeding, now pending in Madison county, in which I. H. Fowler, R. L. Russell, and A. A. Seymour are plaintiffs against B. L. Bullock, shall not be tried or disposed of until after this case is finally disposed of by the Supreme Court; this conditional supersedeas being agreed to by counsel for both sides."

It further appears from the record that A. A. Seymour carried said case to the Supreme Court; that the Supreme Court dismissed the case "for want of prosecution, and adjudged that the judgment of the lower court stand affirmed; and that on June 14, 1928, the judgment of the Supreme Court was made the judgment of the trial court.

Let us now consider briefly the specific reasons (hereinbefore set out by paragraph) assigned in the bill of exceptions why the final judgment quoted above is alleged to be erroneous.

(1) The first contention is that "the evidence showed that A. A. Seymour had suffered no loss—that his entire time was employed at a greater remuneration." This contention is based upon section 3589 of the Civil Code (1910), which reads as follows: "When an agent has been improperly dismissed before the expiration of his time, earnings which were realized or might have been realized by him up to the end of the term should go in mitigation of damages." This code section appears to be based upon the rule laid down in *Ansley* v. *Jordan,* 61 *Ga.* 483 (1). It is not, we think, applicable to the facts of the case at bar. Furthermore, we doubt if the evidence sustains the contention made.

(2) We quote the last sentence of section 1780 of Park's Code (Ga. L. 1912, p. 52) : "Each inspector shall be commissioned for a term of two years subject to the right of the commissioner of agriculture at any time to limit and designate the number of months any short-term inspector shall be employed within the period named in the commission, the commissioner also having the right to discharge any inspector for incompetence, neglect of duty, or malfeasance in office." Both this court and the Supreme Court have held that short-time fertilizer inspectors are "not subject to removal by the Commissioner of Agriculture, except upon cause shown with notice and an opportunity to be heard." *Talmadge* v.

*McDonald, Talmadge* v. *Seymour, Talmadge* v. *Cordell,* supra. Seymour's commission must, of course, be construed in the light of the law. In this connection, see the judgment rendered by Judge Eschol Graham in the superior court of Telfair county on April 12, 1930. This assignment is not meritorious.

(3, 4) We see no merit in these assignments.

(5) The contention that "all of the evidence demanded a verdict for the plaintiff in error," and that "said decision was error for the reason that the bond sued on was not a statutory bond, but was a voluntary bond at best, and under such a bond no attorney's fees could be recovered, and . . the same could not be sued on by any person except the obligee," is ruled adversely to plaintiff in error by the decision in *Talmadge* v. *McDonald,* supra.

(6) There is nothing in the contention that said decision "was contrary to law" because said bond was "exacted" of the said Eugene Talmadge, as commissioner, by the Governor, before any commission could be issued to him, and at the time when the law did not require any bond. See case last cited.

In conclusion, we will state that, in the light of the judgment rendered by Judge Graham in Telfair superior court on April 12, 1930, and the other evidence in the record, the final judgment in the case at bar is supported by the evidence.

*Judgment affirmed. Broyles, C. J., and Hooper, J., concur. MacIntyre, J., not presiding.*