## NATIONAL SURETY COMPANY *v.* SEYMOUR.

No. 9448.   October 11, 1933.

*Shackelford & Shackelford, Samuel D. Hewlett, Walter Mc-Daniel,* and *Clara E. Smith,* for plaintiff in error.

*J. T. Sisk,* contra.

Bell, J.   Seymour, who held a commission as short-term fertilizer inspector from J. J. Brown as commissioner of agriculture, was discharged by Eugene Talmadge, who succeeded Brown in the office of commissioner of agriculture.   Before entering upon the duties of such office Talmadge gave a bond to "faithfully and truly perform all the duties of his office," which bond was signed by the National Surety Company as surety.   Claiming that his discharge from the office of fertilizer inspector constituted a breach of this bond, Seymour brought suit against National Surety Company, to recover a stated sum as principal, besides interest and expenses of litigation, including attorney's fees.   An amendment to the petition, allowed over objection, contained the following allegation: "That the bond, a copy of which is attached to the petition, is the bond given by the said Eugene Talmadge as commissioner of agriculture of the State of Georgia, and was so given by him to comply with the law requiring him to give bond as such officer, and was the only bond given and filed by him as such officer, and is the bond under which he served as commissioner of agriculture of the State of Georgia."   The defendant demurred generally and specially to the petition as amended, and all grounds of the demurrer were overruled.   The trial, before the judge without a jury, resulted in a recovery by the plaintiff.   That judgment was affirmed by the Court of Appeals, and the case is here on certiorari.

The bond sued on was executed on June 25, 1927, the date on which Talmadge was inducted into the office of commissioner of agriculture.   The bond was made payable to "Hon. L. G. Hardman, Governor," and covered a period of two years.   The first and second grounds of the demurrer were as follows: (1) The petition as amended sets out no cause of action.   (2)   The bond is not a statutory bond, not being given under any statute, and the plaintiff is not a party to the same and has no legal right of action thereon.   Since the plaintiff's right to sue was thus challenged at the very

threshold and since it is our opinion that these grounds of demurrer were well taken, a further statement of the facts is not required in this connection. For a full statement, see 46 *Ga. App.* 109.

Strange as it may seem, there was not, until August 23, 1927, any law requiring the commissioner of agriculture to give a bond. On that date the Governor approved an act of the General Assembly which provided "that from and after the passage of this act the Commissioner of Agriculture of the State of Georgia is hereby required to give a bond of fifty thousand ($50,000.00) dollars, as a guaranty of the faithful performance of the duties of his office, and for the proper accounting for all monies, fees, etc., received by the office, said bond to be furnished by a surety company authorized to do business in Georgia by the laws of this State; provided said premium on said bond shall be paid by the State of Georgia." Ga. L. 1927, p. 206. This being the first enactment upon the subject, the bond which was executed about two months previously could not have been made in pursuance of this or any other statute. The bond was therefore not a statutory bond.

The Civil Code of 1910, § 12, provides as follows: "All bonds taken from public officers shall be kept in the places specified by law, and copies thereof shall be furnished to any person desiring them. Suits thereon may be brought by any person aggrieved by the official misconduct of the officer, in his own name, in any court having jurisdiction thereof, without an order for that purpose." Section 291 provides that "Every official bond executed under this Code is obligatory on the principal and sureties thereon . . for the use and benefit of every person who is injured, as well by any wrongful act committed under color of his office as by his failure to perform, or by the improper or neglectful performance of those duties imposed by law." Again, in section 298 it is declared that "Whenever any officer, required by law to give an official bond, acts under a bond which is not in the penalty payable and conditioned, nor approved and filed as prescribed by law, such bond is not void, but stands in the place of the official bond, subject, on its condition being broken, to all the remedies, including the several recoveries, which the persons aggrieved might have maintained on the official bond." Counsel for the plaintiff relies upon these several provisions as sustaining the right to sue; but since the bond here under consideration was not required by any law or statute, it can not be

considered as amounting to more than a common-law bond; and in such case the provisions of these code sections are inapplicable. It follows that the bond does not "stand in the place of the official bond," and the plaintiff can not sue thereon in his own name as the "person aggrieved."

In *Alexander* v. *Ison,* 107 *Ga.* 745 (33 S. E. 657), it was held that a citizen upon whom a tort was committed by the chief of police of a city had no right of action upon a bond executed by the officer in pursuance of a provision of the city charter. In the opinion it was said: "Upon general principles, a citizen upon whom the chief of police committed a tort would have no such right, for the obvious reason that there is no privity of contract between him and the bonded officer or his sureties. Being an entire stranger to the contract, it would require express legislative authority to give him a right of action thereon. . . It was argued here that this case fell within the provisions of section 12 of the Political Code, which declares that 'All bonds taken from public officers shall be kept in the places specified by law, and copies thereof shall be furnished to any person desiring them. Suits thereon may be brought by any person aggrieved by the official misconduct of the officer, in his own name, in any court having jurisdiction thereof, without an order for that purpose.' Obviously, however, the provisions embraced in this section were intended to be applicable only to the public officers of this State who are required by general law to give bonds for the faithful performance of duties they owe to the public at large." In *Anderson* v. *Brumby,* 115 *Ga.* 644, 650 (42 S. E. 77), this court, after referring to the case of *Stephens* v. *Crawford,* 1 *Ga.* 574 (44 Am. D. 680), and another case between the same parties as reported in 3 *Ga.* 499, said: "The doctrine established by the two decisions last above mentioned is simply this: A bond made payable to a public official who is authorized by law to enforce by suit obligations of that character may likewise be enforced by his successor in office, if the bond so stipulates; but the remedy to be pursued in case the bond does not conform to all statutory requirements is, not that pointed out by statute as applicable to obligations given in strict compliance therewith, but that afforded by the rules of the common law." See also *Anderson* v. *Blair,* 118 *Ga.* 211 (45 S. E. 28).

The common-law rule is stated in the Civil Code (1910), § 5516,

as follows: "As a general rule, the action on a contract, whether express or implied, or whether by parol or under seal, or of record, must be brought in the name of the party in whom the legal interest in such contract is vested, and against the party who made it in person or by agent." In *American Surety Co.* v. *Small Quarries Co.,* 157 *Ga.* 33 (120 S. E. 617), it was held that the bond there under consideration was not a statutory bond, and that for this reason "the Quarries Company could not sue the surety company in their own name." While Mr. Justice Hines filed a dissenting opinion in that case, his argument was addressed solely to the question of whether the bond should be considered as statutory in character.

But it is contended that since the office of commissioner of agriculture was created by statute, the legislature had absolute power with respect to it, and that any one accepting such office would be subject to such legislative action as might thereafter be taken in reference thereto. This contention is supported by the decision in *Collins* v. *Russell,* 107 *Ga.* 423 (33 S. E. 444), and for present purposes it may be taken for granted that the legislature had the power to require a bond of the commissioner of agriculture, by a statute enacted subsequently to his induction into the office. But the bond here in question was executed before the passage of any law requiring such a bond, and, at least so far as the surety company is concerned, it was not converted into a statutory instrument by the subsequent legislation and the continued service of the principal as commissioner of agriculture. Whether or not the act of August 23, 1927, could have been made retroactive as to this bond, it was expressly intended to take effect from and after its passage, and thus did not purport to be retroactive in character.

The allegation that the bond was given by the principal to comply with the law requiring him to give bond "as commissioner of agriculture" is wholly futile as a statement of fact, since at the time there was no law to be complied with in that respect. The further allegation that this "was the only bond given and filed by him as such officer, and is the bond under which he served as commissioner of agriculture," might perhaps be sufficient to show an estoppel against the principal himself; but since the principal is not sued, this is not a question for decision in the present case. Presumably the surety company received a consideration for the

execution of this bond; but even so, the consideration was the basis for the contract then and there executed, and not for such as might be required by subsequent legislation. The surety company assumed no duty or obligation to see that the commissioner of agriculture should later give a bond in compliance with any future requirement of the legislature, and accordingly the company is not estopped by the fact that this was the only bond given and filed by the principal, and is the bond under which he served. In the absence of other facts tending to show an estoppel, the company is entitled to have the bond construed as a common-law obligation, and to insist that the plaintiff has no right to maintain a suit thereon in his own name. We can not concur in the views to the contrary as expressed in *Talmadge* v. *McDonald*, 44 *Ga. App.* 728 (162 S. E. 856); and the decisions in cases like *Smith* v. *Taylor*, 56 *Ga.* 292, *County of Fulton* v. *Clarke*, 73 *Ga.* 665, *Dedge* v. *Branch*, 94 *Ga.* 37 (20 S. E. 657), and *American Surety Co.* v. *Googe*, 45 *Ga. App.* 108 (163 S. E. 293), dealing with bonds intended as a compliance with the law existing at the time, are not in point as authority in the present case. The trial court erred in overruling the general demurrer, and the Court of Appeals committed like error in affirming that judgment.

Counsel for the plaintiff has expressed regret at the long and varied litigation which arose out of the discharge of the plaintiff and other fertilizer inspectors. So far as appears, however, only two cases against the surety have ever reached the appellate courts, and the present case is the first and only case which has been brought to this court involving the liability of the surety company.

Whether a suit upon this bond, if otherwise maintainable, should be brought in the name of L. G. Hardman as an individual, or in the name of his successor in office, and whether more than one recovery could be had thereon, are questions which are not presented for decision.

Since the trial court erred in not sustaining the general demurrer, "all that occurred thereafter in the trial went for naught, and it is unnecessary to deal with the specific rulings made in the progress of the trial," or to review the decision of the Court of Appeals in reference thereto. *Hopkins* v. *Watts*, 141 *Ga.* 345 (4, 5) (80 S. E. 1001); *Knott* v. *McWhirter*, 140 *Ga.* 337 (2) (78 S. E. 1062).

*Judgment reversed. All the Justices concur.*